NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5997-12T2

L.C.,[1]

    Appellant,

v.

BOARD OF REVIEW, DEPARTMENT
OF LABOR and LAKELAND BANK,

    Respondent.

---

> APPROVED FOR PUBLICATION
>
> March 16, 2015
>
> APPELLATE DIVISION

Submitted January 21, 2015 – Decided March 16, 2015

Before Judges Messano, Ostrer and Hayden.

On appeal from the Board of Review,
Department of Labor, Docket No. 423,182.

L.C., appellant pro se.

John J. Hoffman, Acting Attorney General,
attorney for respondent Board of Review
(Lewis A. Scheindlin, Assistant Attorney
General, of counsel; Adam Verone, Deputy
Attorney General, on the brief).

Respondent Lakeland Bank has not filed a
brief.

---

[1] As this appeal addresses plaintiff's claim she was a victim of domestic violence, we refer to her and other parties by their initials, consistent with our practice in cases involving domestic violence complaints.

The opinion of the court was delivered by

OSTRER, J.A.D.

In this unemployment insurance appeal, we construe N.J.S.A. 43:21-5(j), which allows a person to receive unemployment insurance benefits when he or she has quit work for reasons related to domestic violence. L.C. claimed she quit her job at Lakeland Bank and moved to Utah to flee an abusive ex-spouse.

Since 1961, our unemployment insurance laws have generally disqualified claimants from receiving benefits if they "left work voluntarily without good cause attributable to such work." L. 1961, c. 43, §3, codified at N.J.S.A. 43:21-5(a). Personal reasons for quitting unrelated to work, regardless of how compelling, have not warranted benefits. Self v. Bd. of Review, 91 N.J. 453, 456-57 (1982). However, in 2000, the Legislature created an exception for workers who leave work because they are victims of domestic violence. L. 1999, c. 391, § 1 (1999 Law), codified at N.J.S.A. 43:21-5(j).

L.C. argues that the Board of Review (Board) misapplied the 1999 Law in denying her claim for benefits. The Board affirmed the determination of the Appeal Tribunal (Tribunal) that L.C. had presented insufficient evidence that she was a victim of domestic violence. The Board did not consider a letter from L.C.'s divorce lawyer, identifying various acts of domestic

violence by her estranged husband.  As we conclude the Board should consider a certification from L.C.'s attorney under the 1999 Law, we reverse and remand for a new hearing.

                                    I.

In February 2013, after almost six years on the job, L.C. gave Lakeland Bank two weeks' notice that she was resigning as a loan processor.  On March 17, 2013, she filed her unemployment claim.  The deputy denied her claim as a voluntary quit without good cause attributable to work.  L.C. appealed, claiming protection under the 1999 Law.

The statute includes two essential elements.  First, a claimant must establish that he or she is a victim of domestic violence as defined in the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-19.  Second, the claimant must establish that the loss of employment, by quitting or discharge, was causally related to being a victim.  The key statutory provision states:  "Notwithstanding any other provisions of this chapter . . . no otherwise eligible individual shall be denied benefits because the individual left work or was discharged due to circumstances resulting from the individual being a victim of domestic violence as defined in section 3 of P.L.1991, c.261 (C.2C:25-19)."  N.J.S.A. 43:21-5(j).  Employers' accounts are unaffected.  Ibid.

The statute identifies six categories of evidence that suffice as proof of victimization. At issue in our case is the sixth category, which refers to "documentation or certification" from various professionals who have "assisted the individual in dealing with the domestic violence." Ibid.

> For the purposes of this subsection (j), the individual shall be treated as being a victim of domestic violence if the individual provides one or more of the following:
>
> (1) A restraining order or other documentation of equitable relief issued by a court of competent jurisdiction;
>
> (2) A police record documenting the domestic violence;
>
> (3) Documentation that the perpetrator of the domestic violence has been convicted of one or more of the offenses enumerated in section 3 of P.L.1991, c.261 (C.2C:25-19);
>
> (4) Medical documentation of the domestic violence;
>
> (5) Certification from a certified Domestic Violence Specialist or the director of a designated domestic violence agency that the individual is a victim of domestic violence; or
>
> (6) Other documentation or certification of the domestic violence provided by a social worker, member of the clergy, shelter worker or other professional who has assisted the individual in dealing with the domestic violence.
>
> [Ibid.]

The Tribunal hearing was conducted in two sessions on May 28 and May 30, 2013. The only witnesses were L.C.; her friend, D.S.; and her former supervisor, M.M. They all appeared by telephone.

The witnesses testified without dispute that L.C.'s husband humiliated her, damaged her property, and physically assaulted her. L.C. testified that she and her husband began living separately in their home in late 2011 or early 2012. She often stayed in the homes of friends. In February or March 2012, she sought permission from the court to relocate with their teenage children. Her husband responded a few months later by filing for divorce. The proceedings that followed were contentious.

L.C. testified that her husband forced her to sleep in the basement in a sleeping bag. She was also subjected to demeaning, coarse, and insulting language from her husband and, at her husband's instigation, her children. One morning, she awoke to find all four of her tires flattened. She contended she was too afraid to file a domestic violence complaint against her husband. But, she asserted that police had to respond to their home on multiple occasions because of their domestic disputes.

She testified that she essentially surrendered to all her husband's demands in the divorce action, including his request

for sole custody of their children, and sole possession of the marital home. The divorce was finalized on March 12, 2013, one day after L.C.'s last day on the job at Lakeland Bank. L.C. moved to Utah the following week. L.C. stated, "I left with nothing but my clothes."

D.S. testified that while L.C.'s divorce action was pending, L.C. would often sleep at her house, to flee mistreatment by her husband. D.S. stated that L.C. lost about thirty pounds, apparently related to her emotional distress. Further, D.S. asserted that L.C.'s husband was mentally unstable, and on one occasion, shoved L.C. around. As his condition deteriorated, D.S. testified, "I was afraid that he would snap and kill her."

M.M. testified that L.C. disclosed her ongoing difficulties with her husband. M.M. confirmed that L.C. indicated to her that she was a victim of domestic violence.

The evidence regarding the causal connection between L.C.'s victimization, and her resignation, was more complicated. L.C. asserted she resigned her job to flee her husband. She testified she was homeless because of her divorce. L.C. also stated, "I was leaving because I was scared." On the other hand, she admitted her move out West was motivated in part by financial considerations, a lower cost of living, and a desire

A-5997-12T2

to be near family. She initially arranged for employment in Nevada, but that fell through. So, she moved to Utah, where she resided with a boyfriend.

The appeals examiner asked D.S. about conversations with L.C. regarding her plans for relocating after her divorce. D.S. testified that L.C. was fighting for custody of her children, but was frustrated by the delays in her divorce case. "I think she just finally decided [at] that last Court hearing whether or not they were divorced she had to go because like I said he did shove her fairly recently before that Court date." D.S. stated that L.C. could not afford to live on her own with her children in New Jersey, and could get help from family out West.

M.M. testified that L.C. told her she was resigning in order to relocate to Las Vegas. Her resignation letter did not address her reasons for leaving. However, in her exit interview, L.C. mentioned her dissatisfaction with her salary.

During the hearing on May 28, 2013, the appeals examiner set forth his interpretation of the 1999 Law, and the proof required to establish she was a victim of domestic violence. He stated that L.C. was required to establish a "direct connection" between being a victim and the separation from work.

> [I]f somebody leaves their job voluntarily
> in the State of New Jersey for any personal
> reasons . . . unrelated to the working
> conditions the person is held disqualified

A-5997-12T2

indefinitely because the quit is not related to the . . . the working conditions, basically. However if a person can show us that they were officially a member [sic] of domestic violence . . . those benefits could potentially be approved if a person is relocating after having shown a <u>direct connection</u> to being . . . a victim of domestic violence the benefits could potentially be approved in those matters. However the burden of proof still falls upon the claimant yourself to show us physical documentation that you were a legitimate victim of domestic violence. That can come about by either a domestic violence specialist report, which you said you don't have and/or police reports showing that you were officially . . . a member [sic] of domestic violence. If that happens and you are approved for unemployment benefits the employer still remains relieved of unemployment benefit charges in those situations.

[(Emphasis added).]

In response to L.C.'s inquiry, the appeals examiner stated that "legitimate written documentation from a professional psychologist or medical doctor" would also suffice, "[a]s long as it is related to . . . you, being a potential member [sic] of domestic violence . . . ." The appeals examiner gave L.C. until June 4, 2013, to submit written evidence.

At the second telephonic hearing on May 30, L.C. stated that based on conversations with police department personnel from her former hometown in New Jersey, she would be unable to obtain police reports, particularly those involving domestic

violence, within five days. L.C. said she contacted the mental health professional who counseled her family, but she could not afford the counselor's $300 fee for preparing a report. After completing oral testimony at the second session, the appeals examiner "close[d] the hearing."

The examiner mailed his decision the same day. He found that L.C. left work voluntarily, without good cause attributable to the work, citing N.J.S.A. 43:21-5(a) and N.J.A.C. 12:17-9.1(e). The examiner rejected L.C.'s claim under the 1999 Law, finding L.C. relocated because she "could not afford to live in New Jersey any longer," and she had family members near her new place of residence. He found that her claim she was a victim of domestic violence was "not . . . credible," because she failed to provide the requisite documentation to establish she was a victim of domestic violence.

On June 4, 2013 — the date by which the appeals examiner stated he would consider proof that L.C. was a victim of domestic violence — L.C.'s former divorce attorney submitted a letter to the Tribunal supervisor, supporting L.C.'s request for unemployment benefits.[2] He stated that L.C.'s husband repeatedly "harass[ed]" and "degrade[ed]" her. "As a result, [L.C.]

_____

[2] The letter was sent by certified mail and was dated June 4, 2013. The record does not reflect the date of receipt.

literally had to leave the State of New Jersey and left her children, home and job behind her." L.C. was so desperate to leave, she waived spousal support, rights to marital property, and accepted limited contact with her children.

The attorney stated that local police, social service agencies, and the Division of Youth and Family Services were all involved in the family discord. He provided a detailed chronology of events between February 2012 and March 2013. He mentioned multiple acts of alleged criminal mischief, attributed to L.C.'s husband, including: cutting telephone and cable wires to the home; loosening the lug nuts on a car wheel; placing a screw in a tire; smashing one of her cosmetic appliances; and flattening all her tires. He also alleged L.C.'s husband falsely accused L.C. of physical threats to him, child molestation, and working in the pornography industry. L.C. allegedly caught her husband stalking her on one occasion. The attorney also identified instances of abusive language, and other conduct apparently designed to annoy L.C., such as turning off the heat while she was sleeping, throwing her belongings into the basement, and rewarding the children when they insulted their mother.

Contrary to L.C.'s testimony that she was too afraid to seek restraining orders against her husband, the attorney wrote

10                                                              A-5997-12T2

that L.C. twice sought domestic violence restraining orders, "but she was turned down both times." The attorney stated that L.C. sought a restraining order after her husband tampered with her car in May 2012. He did not identify the date of the other domestic violence complaint, nor did he disclose whether the denial of a restraining order was by a court, after a full evidentiary hearing.

There is no indication in the record that the Tribunal or the Board considered the attorney's letter. In a decision mailed July 2, 2013, the Board affirmed the Tribunal's decision "[o]n the basis of the record below," after finding that L.C. was given a full opportunity to present evidence and there was "no valid ground for a further hearing."

L.C. appeals, arguing that she was entitled to benefits under the 1999 Law, as she left New Jersey to escape an abusive relationship. She asserts the appeals examiner set unreasonable deadlines for the submission of proof she was a victim of domestic violence. She also contends the letter from her attorney should have been considered and deemed sufficient as documentation from an "other professional who has assisted the individual in dealing with the domestic violence" under N.J.S.A. 43:21-5(j)(6).

Although neither the Tribunal nor the Board expressly considered the attorney's letter, the Board does not argue the letter was appropriately rejected as untimely. Rather, the Board asserts an attorney is not an acceptable source of documentation under paragraph (6), and, in any event, the attorney's letter did not document acts of domestic violence. Absent the requisite proofs under paragraphs (1) through (6), the Board contends the 1999 Law did not apply, and L.C. was disqualified because she left work voluntarily without good cause attributable to work.

## II.

Addressing the principal issue on appeal, we conclude an attorney is an acceptable source of "documentation or [a] certification of the domestic violence" under N.J.S.A. 43:21-5(j)(6). However, we also determine that written evidence of the domestic violence, if drafted for the purpose of supporting the unemployment insurance claim, should be in the form of a certification, consistent with Rule 1:6-6. We also address other issues of statutory construction raised by the appeal.

## A.

We begin with our standard of review. Although we afford some deference to an agency's interpretation of a statute it is charged with enforcing or applying, we are not bound by the

agency's interpretation. <u>Hargrove v. Sleepy's, LLC</u>, 220 <u>N.J.</u> 289, 301-02 (2015). In reviewing an agency's adjudication, "[a]n appellate tribunal is . . . in no way bound by the agency's interpretation of a statute." <u>Mayflower Sec. Co. v. Bureau of Sec.</u>, 64 <u>N.J.</u> 85, 93 (1973). "Although deference is due the interpretation of a regulatory scheme by the agency charged with its enforcement, statutory interpretation is ultimately the task of the judiciary." <u>Mortg. Bankers Ass'n v. N.J. Real Estate Comm'n</u>, 102 <u>N.J.</u> 176, 191 (1986).

Deference to an agency's interpretation is particularly compelling when the agency's interpretation is grounded in its technical or specialized expertise. <u>See</u> <u>In re Freshwater Wetlands Prot. Act Rules</u>, 180 <u>N.J.</u> 478, 489 (2004) (stating "deference is appropriate because . . . agencies have the specialized expertise necessary to enact regulations dealing with technical matters") (internal quotation marks and citation omitted); <u>A.Z. ex rel. B.Z. v. Higher Educ. Student Assistance Auth.</u>, 427 <u>N.J. Super.</u> 389, 394 (App. Div. 2012). Deference is also justified when the agency's interpretation has persisted for an extended period of time without legislative interference. That is because "the practical administrative construction of a statute over a period of years without interference by the legislature is evidence of its conformity with the legislative

intent . . . ." Body-Rite Repair Co. v. Dir., Div. of Taxation, 89 N.J. 540, 545-46 (1982) (internal quotation marks and citation omitted).

These considerations do not apply here. The determination of whether a person is a victim of domestic violence does not fall within the technical expertise of the Division of Unemployment Insurance (Division). The interpretation of the PDVA, and the adjudication of claims of domestic violence have been a judicial function. Pursuant to the PDVA, judges and judicial staff receive specialized training in the handling of domestic violence cases. N.J.S.A. 2C:25-20(b).

Although the Division has adopted regulations to implement the 1999 Law, the regulations essentially repeat verbatim the relevant statutory language, with minor renumbering changes. See N.J.A.C. 12:17-9.12.[3] We are unaware of any prior, consistent administrative interpretation of the statute as it pertains to whether "other professional[s]" includes attorneys, and the Board has not identified any. In this case, neither the Board

_____

[3] The regulations deviate from the statutory language only with respect to clarifying that non-profit and public employers "electing the reimbursable method pursuant to N.J.S.A. 43:21-7.2" are also shielded from charges to their account for benefits paid under the 1999 Law. N.J.A.C. 12:17-9.12(b).

nor the Tribunal expressly stated in their decisions that an attorney was not an acceptable professional under paragraph (6).[4]

B.

Turning to the 1999 Law, our interpretation is guided by well-established principles. Our mission is to ascertain and implement the Legislature's intent as embodied in the statutory

---

[4] Although the regulations do not define "other professional," the Division recognized the 1999 Law's salutary effect in its social impact statement accompanying its rule-making:

> The proposed new rule will have a positive social impact in that it will prevent economic concerns from causing victims of domestic violence to hesitate in taking all appropriate actions in order to protect their personal safety in what may potentially be life-threatening situations. Domestic violence affects victims, their families, and the communities in which they live. Victims bear the physical and psychological burdens of abuse, with a severely decreased quality of personal and professional life. Many victims remain in abusive relationships because they do not have available to them sufficient alternatives. Among the factors which often finally contribute to the important decision of victims of domestic violence to separate from their abusers and begin lives of independence, is a sense of financial security. The State can assist in providing that financial security to these individuals by permitting them to collect unemployment benefits when they have left work or been discharged due to circumstances resulting from their having been the victims of domestic violence.
>
> [32 N.J.R. 1699(a) (May 15, 2000).]

language.  See, e.g., In re Kollman, 210 N.J. 557, 568 (2012). "We ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted). "If the language is clear, our task is complete; if it is not, we may turn to extrinsic evidence." Myers v. Ocean City Zoning Bd. of Adjustment, 439 N.J. Super. 96, 100 (App. Div. 2015) (citing Kollman, supra, 210 N.J. at 568).

We may also turn to extrinsic materials if a literal interpretation would lead to a result that is absurd, or "at odds with the overall statutory scheme." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012). Extrinsic materials may include the legislative history, committee reports, and sponsor statements. Ibid. We are guided in our task "by the legislative objectives sought to be achieved by enacting the statute." Ibid.

Based on its plain language, paragraph (6) includes attorneys as an acceptable source of a "documentation or certification of the domestic violence." N.J.S.A. 43:21-5(j)(6). The paragraph refers to "a social worker, member of the clergy, shelter worker or other professional who has assisted the individual in dealing with the domestic violence."

16

Ibid. (emphasis added). Certainly, an attorney assists a person in dealing with domestic violence when counseling a client as to his or her rights and remedies in a case of domestic violence, or in representing a client in seeking relief. That is so whether the attorney represents a client in an action under the PDVA, or in a matrimonial or non-dissolution action.

We recognize that "other professional[s]" must share some common attributes with the persons that the statute specifically identifies. "'[W]here general words follow specific words in a statutory enumeration, the general words are construed to embrace <u>only objects similar in nature</u> to those objects enumerated by the preceding specific words.'" <u>Gallenthin Realty Dev., Inc. v. Borough of Paulsboro</u>, 191 <u>N.J.</u> 344, 367 (2007) (quoting 2A Norman J. Singer, <u>Sutherland Statutory Construction</u> § 47:17 (6th ed. 2000)).

The three specifically identified sources of documentation or certification in paragraph (6) are not restricted to a single category of professional, such as those licensed to practice in the mental health field. Indeed, members of the clergy and shelter workers are not professionals in the sense of being licensed by the State.[5] They are professionals in the sense that

---

[5] We need not address, in this case, who would qualify as "clergy" under the statute. <u>See</u> <u>In re Murtha</u>, 115 <u>N.J. Super.</u>
(continued)

they have received specialized training that may include the capacity to counsel or assist a victim of domestic violence.

Nor do the three identified sources necessarily provide the same kind of services. A social worker may provide mental health counseling, or may restrict his or her services to assisting a victim in accessing governmental services and support programs. It is unclear from the statute what services a shelter worker may provide to a victim. A "shelter worker" is obviously distinct from a "certified domestic violence specialist," who may provide a certification under paragraph (5) that a person is a domestic violence victim. Although "shelter worker" is undefined, "domestic violence specialist" is defined to mean "a person who has fulfilled the requirements of certification as a Domestic Violence Specialist established by the New Jersey Association of Domestic Violence Professionals." N.J.S.A. 43:21-5(j). Given the breadth of skills, education, and assistance provided by the three persons named in the statute, "other professional[s]" reasonably may include an

_____

(continued)
380, 384-86 (App. Div.) (holding that a nun in a teaching order was not "a clergyman, minister or other person or practitioner authorized to perform similar functions" under former Evidence Rule 29, governing clergy-penitent privilege) (internal quotation marks and citation omitted), certif. denied, 59 N.J. 239 (1971); see also State v. Cary, 331 N.J. Super. 236, 240-47 (App. Div. 2000) (discussing whether a Baptist Deacon qualifies as a cleric or spiritual advisor under N.J.R.E. 511).

attorney providing legal services to assist a client in "dealing with . . . domestic violence."

Our interpretation is consistent with the legislative purpose of the 1999 Law, and its legislative history. The sponsor's expressed purpose was to "prevent economic concerns from causing a victim to hesitate in taking all appropriate actions to increase personal safety in what may potentially be a life-threatening situation." Sponsor's Statement to Senate Bill No. 869, 208th Legislature (March 19, 1998). The statute's legislative history does not otherwise address the specific question before us, that is, the breadth of the category of "other professional[s]" in paragraph 6.[6]

We are aware that many states, prompted by the federal incentives offered in a provision of the American Recovery and Reinvestment Act of 2009, 42 U.S.C.A. § 1103(f)(3)(B)(i)(I), have adopted legislation to assure unemployment insurance benefits to persons who quit work for a "compelling family reason" such as domestic violence or sexual assault. See The

---

[6] In the year prior to the 1998 introduction of the legislation that would become the 1999 Law, we affirmed the Board's denial of benefits to a claimant who quit her job and moved to California, to flee an abusive husband after obtaining a final restraining order against him. Pagan v. Bd. of Review, 296 N.J. Super. 539, (App. Div.), certif. denied, 150 N.J. 24 (1997). However, we are unaware of any evidence that the Legislature's purpose was to respond in some way to the Pagan decision.

Women's Legal Defense & Educ. Fund, <u>ARRA: Extending the</u> <u>Unemployment Insurance Safety Net to Victims of Domestic</u> <u>Violence</u>, at 3 (identifying states that have adopted legislation pursuant to the federal law), <u>available at</u> http://www. legalmomentum.org/sites/default/files/reports/arra-extending-ui-dv.pdf (last visited February 25, 2015). The federal law requires verification "by such reasonable and confidential documentation as the State law may require." 42 <u>U.S.C.A.</u> § 1103(f)(3)(B)(I).

Many states expressly include attorneys as an acceptable source of substantiation that a victim sought assistance for domestic violence. <u>See, e.g.</u>, Colo. Rev. Stat. § 8-73-108(r) (2014) (allowing unemployment benefits for claimants separated from a job due to domestic violence upon presenting documentation, including "from a qualified professional from whom the [claimant] has sought assistance for the domestic violence, such as a counselor, shelter worker, member of the clergy, <u>attorney</u>, or health worker") (emphasis added).[7] The law

---

[7] <u>See also</u> Del. Code Ann. tit. 19, § 3314(1) (2015) (requiring documentation that may include "a police or court record, or documentation of the domestic violence from a shelter worker, attorney, member of the clergy or medical or other professional from whom the employee has sought assistance in addressing domestic violence and its effects"); D.C. Code § 51-132 (LexisNexis 2015) (requiring documentation that may include a written report affirming the claimant sought assistance for
(continued)

of at least one state, like New Jersey, does not identify

attorneys, but refers to documentation from other professionals,

which is not further defined.   N.C. Gen. Stat. § 96-14.8(2)

(2014) (allowing "[d]ocumentation from a religious, medical, or

(continued)
domestic violence "from the signatory," from a "(i) [s]helter official; (ii) [s]ocial worker; (iii) [c]ounselor; (iv) [t]herapist; (v) [a]ttorney; (vi) [m]edical doctor; or (vii) [c]leric"); 820 Ill. Comp. Stat. Ann. 405/601(B)(6)(a) (LexisNexis 2014) (allowing "evidence of domestic violence from a member of the clergy, attorney, counselor, social worker, health worker or domestic violence shelter worker"); Kan. Stat. Ann. § 44-706(a)(12) (Supp. 2013) (allowing "a statement provided by a counselor, social worker, health care provider, clergy, shelter worker, legal advocate, domestic violence or sexual assault advocate or other professional who has assisted the individual in dealing with the" domestic violence and its effects); Mass. Ann. Laws ch. 151A, § 1(g1/2) (LexisNexis 2014) (allowing "a statement provided by a counselor, social worker, health worker, member of the clergy, shelter worker, legal advocate or other professional who has assisted the individual in addressing the effects of the abuse"); Minn. Stat. § 268.095(9) (2014) (allowing a "written statement" that the applicant "is a victim of domestic abuse, provided by a social worker, member of the clergy, shelter worker, attorney at law, or other professional who has assisted the applicant in dealing with the domestic abuse"); R.I. Gen. Laws § 28-44-17.1(b) (2014) (requiring documentation that may include "but [is] not limited to, police or court records, or other documentation of domestic abuse from a shelter worker, attorney, member of the clergy, or medical or other professional from whom the individual has sought assistance"); S.C. Code Ann. § 41-35-125(A)(2) (2013) (allowing "documentation of domestic abuse such as police or court records or other documentation of abuse from a shelter worker, attorney, member of the clergy, or medical or other professional from whom the individual has sought assistance"); Vt. Stat. Ann., tit. 21, § 1253 (2014) (allowing a sworn statement from the individual, court records, "or other documentation from an attorney or legal advisor, member of the clergy, or health care provider").

other professional from whom the individual has sought assistance in dealing with the alleged domestic violence"). The treatment of this issue by other states demonstrates that including attorneys is a reasonable interpretation of "other professionals" who assist domestic violence victims.

Having concluded that an attorney is an acceptable source of proof under paragraph (6), we turn to address the form of proof required. The words "documentation" and "certification" are both used in a paragraph (6), which refers to "[o]ther documentation or certification of the domestic violence" provided by the enumerated persons who assisted the individual. We conclude that the manner in which the words are used in paragraphs (1) through (5) imply that "documentation" consists of a writing that was created independently of the person's claim for unemployment benefits, in the course of the person's response to domestic violence. By contrast, a "certification" consists of a statement prepared for the purpose of establishing the claimant was a victim.

Paragraph (1) refers to a restraining order or other "documentation of equitable relief" granted by a court. Police records that "document[] the domestic violence" can serve as proof under paragraph (2). The statute refers to conviction records of the perpetrator of domestic violence as

"[d]ocumentation." N.J.S.A. 43:21-5(j)(3). Similarly, the statute refers to "medical documentation" of the domestic violence. N.J.S.A. 43:21-5(j)(4). On the other hand, a statement of a certified domestic violence specialist or a domestic violence agency director that a person is a domestic violence victim must be provided in the form of a "[c]ertification." N.J.S.A. 43:21-5(j)(5). Thus, "documentation . . . of the domestic violence" provided by the professional may consist of contemporaneous records of the assistance provided. On the other hand, a statement made for the purpose of supporting the unemployment insurance claim should be in the form of a certification.

C.

Other issues of interpretation warrant our attention. We conclude that one of the six forms of proof is a prerequisite to establishing the right to benefits under the 1999 Law, notwithstanding that the plain language may be read to consider one of the forms of proof sufficient, but not mandatory. We also conclude that the causation element does not require a direct causal connection between the domestic violence and the claimant's unemployment.

1.

Based on its plain language, the statute is unclear whether one of the six forms of proof is not only sufficient, but necessary to establish that a claimant is a victim of domestic violence. The statute provides that "the individual shall be treated as being a victim of domestic violence if the individual provides one or more of the following" forms of proofs; but it does not expressly exclude proof through other means. N.J.S.A. 43:21-5(j). However, we conclude, based on an accepted canon of statutory interpretation, as well as clear legislative history, that at least one of the six forms of proof is essential to establishing a claim under the 1999 Law.

First, one of the forms of proof is necessary if we apply the maxim expressio unius est exlusio alterius, that is, "the express mention of one thing implies the exclusion of another." Gangemi v. Berry, 25 N.J. 1, 11 (1957). The maxim should not be applied arbitrarily. Ibid. Nonetheless, generally, "[w]hen the Legislature creates an exhaustive list, it is assumed to intend to exclude what is not enumerated unless it indicates by its language that the list or section is not meant to be exhaustive or exclusive." Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 215 (2013).

The legislative history reflects the intention that one of the six forms of proof shall be a prerequisite to establishing that a person was a domestic violence victim. "The committee amended the bill to require that in order for an individual to be treated as a victim of domestic violence under the provisions of the bill, the individual <u>shall provide</u> one or more of" the six categories of proof ultimately included in the statute. <u>Senate Women's Issues, Children and Family Servs. Comm. Statement to Senate Bill No. 869</u>, 208th Legislature (May 20, 1999) (emphasis added). <u>See also Senate Budget and Appropriations Comm. Statement to Senate Bill No. 869</u>, 208th Legislature (First Reprint) (November 8, 1999) ("The bill requires that for an individual to be treated as a victim of domestic violence under the provisions of the bill, the individual shall provide at least one of the . . . forms of documentation . . . ."); <u>Assembly Labor Comm. Statement to Assembly Bill No. 2366</u>, 208th Legislature (First Reprint) (December 6, 1999) ("Benefits are prohibited unless an individual provides at least one of the forms of documentation of domestic violence enumerated in the bill.").

Based on its plain language, the Legislature also determined that only one of the forms of proof was required, in order to "be treated as being a victim of domestic violence."

25                                                                    A-5997-12T2

N.J.S.A. 43:21-5(j).  The individual must "provide[] one or more" of the specified forms of proof.  Ibid.  Upon doing so, the individual "shall be treated as being a victim of domestic violence."  Ibid.  In other words, the submission of one of the forms of proofs is dispositive.  Apparently, the Legislature did not want to assign to the Division the task of conducting trials within trials — that is, a full-blown trial on whether a person was a victim of domestic violence, before reaching the issues pertaining to separation from work.  Rather, the Legislature identified forms of acceptable proof that would determine the issue.[8]  Consequently, so long as a claimant produces at least one form of proof, the failure to produce another identified form of proof should bear no weight in determining whether to treat the claimant as a victim.[9]

---

[8] The Legislature could have provided that submission of one of the forms of proof was essential, but not necessarily sufficient.  Such an approach is apparently found, for example, in the D.C. Code, which states, "A claimant may be eligible to receive benefits for separation from employment due to domestic violence provided that one of the following is submitted to support the claim of domestic violence . . . ."  D.C. Code. § 51-132.  Thus, unlike N.J.S.A. 43:21-5(j), the D.C. Code does not expressly compel a finding of victimization upon submission of one of the designated forms of proof.

[9] We recognize that L.C.'s attorney asserted that L.C. was twice turned down for domestic violence restraining orders.  However, particularly on this record, that would not preclude L.C.'s claim of victimization in the context of her unemployment insurance claim.  We have previously held that a plaintiff who
(continued)

As enacted, the 1999 Law requires an indirect, two-stage causation analysis. The legislation's drafters recognized that being a victim of domestic violence will create circumstances (stage one), which in turn may lead to separation from work (stage two). Also, the focus is not on the act of domestic violence as the initiating cause, but, one step removed, the claimant's "being a victim of domestic violence." N.J.S.A. 43:21-5(j). The claimant need prove that he or she left work, or was discharged, "due to circumstances" which in turn "result[ed] from . . . being a victim." Ibid. By its plain language, the causal connection may be indirect. Thus, one would interpret the statute too narrowly to conclude that a quit for financial reasons is necessarily insufficient. Financial reasons may arise out of being a victim of domestic violence —

_____

(continued)
has prevailed in a domestic violence action may not apply the doctrine of collateral estoppel to bar the relitigation of the issues in a subsequent personal injury action against the same defendant. L.T. v. F.M., 438 N.J. Super. 76, 86-89 (App. Div. 2014). In L.T., we considered, among other factors, the summary nature of the domestic violence proceeding, the lack of discovery, and lack of counsel, as weighing against application of the doctrine. Id. at 87-89. In this case, the record does not reflect whether L.C. was turned down after a hearing; whether the denial of the restraining order was based on an adverse determination on the issue of whether a predicate act was committed, or was based on other considerations pertaining to relief; or, whether L.C. alleges acts of domestic violence committed after the prior adverse determinations.

for example, where a domestic violence victim is compelled to terminate a financially supportive but abusive relationship.

We draw some support for this interpretation from the legislative history. As introduced in the Senate and Assembly, the legislation consisted of only the first two sentences of the statute ultimately enacted, with one significant difference pertaining to the causation element. The bill stated:

> Notwithstanding any other provisions of this chapter (R.S.43:21-1 et seq.), no otherwise eligible individual shall be denied benefits because the individual left work or was discharged due to circumstances <u>directly</u> resulting from the individual being a victim of domestic violence as defined in section 3 of P.L.1991, c.261 (C.2C:25-19). No employer's account shall be charged for the payment of benefits to an individual who left work due to circumstances <u>directly</u> resulting from the individual being a victim of domestic violence.
>
> [Senate Bill No. 869, 208th Legislature, (March 19, 1998) (emphasis added).]

<u>See also</u> Assembly Bill No. 2366, 208th Legislature (September 14, 1998). As amended, the word "directly" was removed. The committee statement explained the amendment was intended "to delete the requirement for qualification under the bill that the circumstances 'directly' result from domestic violence . . . ." <u>Senate Women's Issues, Children and Family Servs. Comm. Statement to Senate Bill No. 869</u>, 208th Legislature (May 20, 1999).

A person may quit a job for multiple causes, including, but not limited to, being a victim of domestic violence. For example, as a result of being a victim of domestic violence, a person may decide to move some distance from the abuser; but, as a result, the commute to work may become burdensome, leading the person to quit his or her job. Consistent with the remedial purpose of the statute, we conclude that being a victim of domestic violence need not be the sole factor in the quit or discharge. Rather, it suffices if being a victim of domestic violence resulted in circumstances that were a substantial factor in causing a claimant's decision to resign. See E.C. v. RCM of Wash., Inc., 92 A.3d 305, 309 (D.C. 2014) (stating that domestic violence must be a "substantial factor" to satisfy the causation element of D.C. Code § 51-131(a), which authorizes benefits when an "individual was separated from employment by discharge or voluntary or involuntary resignation due to domestic violence against the individual").

### D.

In light of the foregoing principles, we conclude L.C.'s attorney was qualified to provide documentation or certification of domestic violence, since he assisted her in dealing with multiple acts of domestic violence. Contrary to the Board's argument that counsel's letter "makes no mention of domestic

violence," counsel catalogued various incidents that satisfy the definition of acts of domestic violence under the PDVA, N.J.S.A. 2C:25-19. These include criminal mischief, see N.J.S.A. 2C:25-19(a)(10), N.J.S.A. 2C:17-3, based on L.C.'s husband's damage to her domestic appliance, and her vehicle; and stalking, see N.J.S.A. 2C:25-19(a)(14), N.J.S.A. 2C:12-10. Counsel also described acts of harassment, see N.J.S.A. 2C:25-19(a)(13), N.J.S.A. 2C:33-4, based on her husband's repeated communications in an "offensively coarse language . . . likely to cause annoyance or alarm," N.J.S.A. 2C:33-4(a), and his repeated acts designed "to alarm or seriously annoy" her, N.J.S.A. 2C:33-4(c), such as turning off the heat, cutting telephone and cable wires, throwing her clothes, making false accusations, and promoting disrespectful behavior by their children.

In view of our clarification of the form of proof to be provided under N.J.S.A. 43:21-5(j)(6), L.C. should have the opportunity on remand to provide a "certification of the domestic violence" from her attorney instead of the unsworn letter she submitted to the Tribunal. Alternatively, she may submit writings provided by her attorney and created during his representation, if they document domestic violence.

It is also apparent that the Tribunal applied a more demanding standard of causation than prescribed by the 1999 Law.

The appeals examiner advised L.C. that she needed to demonstrate a "direct connection" between her relocation and domestic violence. As we have discussed, the connection between domestic violence and the separation from work may be indirect, so long as being a victim of domestic violence resulted in circumstances that were a substantial factor in causing a claimant's decision to resign. On remand, assuming L.C. provides satisfactory proof of victimization, the Board shall apply this standard of causation to determine whether L.C. "left work . . . due to circumstances resulting from . . . [her] being a victim of domestic violence . . . ." See N.J.S.A. 43:21-5(j).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION