SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**S.L.W. v. New Jersey Division of Pensions and Benefits** **(A-32-18) (081723)**

**Argued April 24, 2019 -- Decided June 24, 2019**

**TIMPONE, J., writing for the Court.**

When members of the Police and Firemen's Retirement System (PFRS) die after retirement, their children and widowed spouses are eligible to receive survivor benefits under N.J.S.A. 43:16A-12.1. S.L.W., an adult woman with disabilities, sought survivor benefits after her father, a longtime member of the New Jersey law enforcement community, passed in 2012. In this appeal, the Court considers whether, as the Division of Pensions and Benefits (Division) maintains, S.L.W. must prove under N.J.A.C. 17:4-3.7 that she was dependent on her father before his death.

S.L.W.'s father retired after a long career in law enforcement and began receiving pension retirement benefits from PFRS. S.L.W. followed her father into law enforcement. Tragedy struck in late 2008 when a drunk driver plowed into S.L.W.'s patrol car while she was on duty. Her injuries led to her physical disability and, concurrently, her inability to work. At the time of the accident, S.L.W. was twenty-eight years old, had never married, and lived independently. Going forward, S.L.W. relied on her father for upwards of 90% of her living expenses but indicated on her income taxes that no one could claim her as a dependent.

S.L.W.'s father died in June 2012. About a year and a half later, S.L.W. attempted to submit an application for survivor benefits under his pension plan. In late June 2014, the Division wrote to S.L.W., indicating that she did not meet the Division's interpretation of the word "child" for PFRS purposes because she had been emancipated and employed prior to her disability. The letter concluded that, even if the Division's interpretation of "child" was incorrect, S.L.W. was still bound to prove dependency under N.J.A.C. 17:4-3.7.

In July 2014, S.L.W. filed a letter-appeal with the PFRS Board of Trustees (Board) disputing the Division's explanation that she must provide tax returns showing her father had claimed her as a dependent. The Board held a hearing on the matter in early August 2014 and decided S.L.W. did not qualify for survivor benefits. Nevertheless, the Board referred the matter to the Office of Administrative Law for an evidentiary hearing.

1

After the matter was assigned to an Administrative Law Judge (ALJ), S.L.W. and the Division cross-moved for summary judgment. The ALJ concluded S.L.W. did not qualify as a "child" under N.J.S.A. 43:16A-1(21)(d), granted the Division's motion for summary judgment, denied S.L.W.'s motion for summary judgment, and dismissed S.L.W.'s appeal. In November 2016, the Board adopted the recommendations of the ALJ.

S.L.W. appealed the Board's decision. The Appellate Division affirmed in part. The Appellate Division agreed with the ALJ's determination that S.L.W. did not properly establish dependency but found that S.L.W.'s emancipation did not disqualify her as a "child" under N.J.S.A. 43:16A-1(21)(d).

The Court granted S.L.W.'s petition for certification. 236 N.J. 217 (2018). The Division did not cross-petition to challenge the determination that S.L.W. was not disqualified as a "child."

**HELD:** Upon review of the PFRS statute's plain language and history, the Court finds that the Legislature did not intend for children of PFRS members to meet a dependency requirement to receive survivor benefits. The Court's finding is consistent with the PFRS's underlying policy goal of financially protecting the family members of deceased PFRS members.

1. PFRS not only provides for the financial well-being of retired police and firemen, but also ensures financial stability for their surviving spouses and children by allowing for survivor benefits for certain family members of a retiree in the system. As relevant here, a "child" eligible for survivor benefits is defined in the PFRS pension scheme as a deceased member's or retirant's unmarried child "of any age who, at the time of the member's or retirant's death, is disabled because of an intellectual disability or physical incapacity, is unable to do any substantial, gainful work because of the impairment and [her or] his impairment has lasted or can be expected to last for a continuous period of not less than 12 months, as affirmed by the medical board." N.J.S.A. 43:16A-1(21)(d). The PFRS statute includes an enabling clause allowing the State Treasurer to "promulgate any rules and regulations necessary to accomplish the purposes of this act." N.J.S.A. 43:16A-16.16. One such enacted regulation provides: "Proof of dependency shall be established by the filing of an affidavit of dependency, supported by the deceased and the claimant's income tax returns, for the period immediately preceding the death or accident." N.J.A.C. 17:4-3.7. (pp. 12-13)

2. The Court previously considered PFRS survivor benefits in Saccone v. PFRS, 219 N.J. 369 (2014). In Saccone, the Court emphasized the recognized strong public policy favoring the financial protection of a public employee's family, including protecting a public employee's ability to provide adequately for the well-being of his disabled child

2

after his death.  Id. at 382.  The Court concluded that the survivor benefits statute, like the entire PFRS pension scheme, should be interpreted in light of its remedial character and construed in a manner that furthers its fundamental purpose.  Id. at 387.  (p. 14)

3.  The literal reading of N.J.S.A. 43:16A-1(21)(d) supports S.L.W.'s argument:  the definition of "child" makes no mention of any dependency requirement for survivor benefits.  The plain language of the statute, viewed through the lens of the statute's commitment to provide for the financial security of a retirant's surviving children with disabilities, is sufficient to end this inquiry.  (pp. 15-16)

4.  Review of the legislative history of N.J.S.A. 43:16A-12 and its related definitions underscores the fact that the absence of a dependency requirement was an intentional choice of the Legislature.  The PFRS statute's definition of "child" has never included a dependency requirement, unlike its definitions of certain other family members.  The Court declines to conclude N.J.S.A. 43:16A-1(21)'s definition of child holds any implied, presumed, or suggested dependency requirement for children who may qualify for survivor benefits under N.J.S.A. 43:16A-12.1.  The Division's implementation of its contrary interpretation of the statute through its denial of S.L.W.'s appeal on the basis of her presumed ineligibility was arbitrary, capricious, and unreasonable.  (pp. 17-20)

5. The Court cannot find S.L.W. eligible for survivor benefits as she has not yet had the opportunity to prove she meets all the requirements for those benefits.  As such, this matter must be remanded to determine whether S.L.W. is otherwise eligible for survivor benefits.  (p. 21)

**The judgment of the Appellate Division is REVERSED and the matter is REMANDED to the Board for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE'S opinion.**

3

S.L.W.,

Petitioner-Appellant,

v.

New Jersey Division of Pensions and Benefits,

Respondent-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| April 24, 2019 | June 24, 2019 |

John F. Pilles, Jr., argued the cause for appellant (John F. Pilles, Jr., on the brief).

Amy Chung, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Juliana C. DeAngelis, Deputy Attorney General, on the brief).

JUSTICE TIMPONE delivered the opinion of the Court.

When members of the Police and Firemen's Retirement System (PFRS)

die after retirement, their children and widowed spouses are eligible to receive

survivor benefits under N.J.S.A. 43:16A-12.1. S.L.W., an adult woman with disabilities, sought survivor benefits after her father, a longtime member of the New Jersey law enforcement community, passed in 2012. The Division of Pensions and Benefits (Division) maintains S.L.W. is ineligible. It argues that to receive survivor benefits she must prove that she was dependent on her father before his death, citing N.J.A.C. 17:4-3.7.

The statutory definition of "child" within the PFRS framework, N.J.S.A. 43:16A-1(21), provides:

> "Child" shall mean a deceased member's or retirant's unmarried child (a) under the age of 18, or (b) 18 years of age or older and enrolled in a secondary school, or (c) under the age of 24 and enrolled in a degree program in an institution of higher education for at least 12 credit hours in each semester, provided that the member died in active service as a result of an accident met in the actual performance of duty at some definite time and place, and the death was not the result of the member's willful misconduct, or (d) of any age who, at the time of the member's or retirant's death, is disabled because of an intellectual disability or physical incapacity, is unable to do any substantial, gainful work because of the impairment and his impairment has lasted or can be expected to last for a continuous period of not less than 12 months, as affirmed by the medical board.

Upon review of the PFRS statute's plain language and history, we find that the Legislature did not intend for children of PFRS members to meet a dependency requirement to receive survivor benefits. This finding is consistent with the

PFRS's underlying policy goal of financially protecting the family members of deceased PFRS members.

## I.

## A.

We elicit the facts from the record.

J.R.W. and C.L.M. married and had two children, including S.L.W. The parents divorced; J.R.W. later remarried. J.R.W. retired on January 1, 2005, after a long career in law enforcement. Shortly thereafter, he began receiving pension retirement benefits from PFRS.

S.L.W. was twenty-five years old at the time of J.R.W.'s retirement. S.L.W. had followed her father into law enforcement, serving as an officer for the Delaware River Port Authority. What follows are S.L.W.'s representations of the pertinent facts of her case.

Tragedy struck in late 2008 when a drunk driver plowed into S.L.W.'s patrol car while she was on duty. Her injuries led to her physical disability and, concurrently, her inability to work. At the time of the accident, S.L.W. was twenty-eight years old, had never married, and lived independently.

S.L.W. further states that, in striving for a modicum of independence and to respect her father's privacy, she did not move in with him after her accident. Still, she asserts that she depended almost entirely on him

3

financially going forward. J.R.W. directly paid S.L.W.'s creditors and gave her money, in cash, to cover her living expenses. Despite relying on her father for upwards of 90% of her living expenses, S.L.W. indicated on her income taxes that no one could claim her as a dependent.

Although her father's tax returns are not part of the record, the parties apparently agree that J.R.W. likely never claimed S.L.W. as a dependent on his income taxes after the accident.

J.R.W. died in June 2012. His second wife predeceased him in 2008. About a year and a half after J.R.W.'s death, S.L.W. notes that she attempted to submit an application for survivor benefits under J.R.W.'s pension plan to the Division of Pension and Benefits. S.L.W. reviewed Fact Sheet No. 19 from the Division. It stated a retired member's "child(ren)" may be entitled to survivor benefits. The fact sheet's definition of "child" included a retirant's child who is unmarried, of "any age," and "who, at the time of [the member's or retirant's] death is disabled because of mental or physical incapacity and is incapable of substantial employment because of the impairment," if the incapacity is expected to last at least twelve continuous months. That definition of "child" was repeated in the PFRS Handbook.

S.L.W. asserts that a Division representative did not allow her to submit an application, informing her she did not qualify for survivor benefits because

4

J.R.W. had not claimed her as a dependent on his income taxes and she had not lived with her father before or at the time of his death.

S.L.W. hired a lawyer. S.L.W. chronicled her lawyer's efforts on her behalf. Her lawyer wrote to the Division outlining S.L.W.'s claim for benefits. Nearly a month later, the Division responded with a call to S.L.W.'s lawyer in which the representative parroted the explanation S.L.W. had already received of why she was ineligible for survivor benefits.

Litigation ensued. On April 14, 2014, S.L.W. filed a claim against the Division in Camden County's Law Division, seeking an order awarding S.L.W. survivor benefits under her father's retirement plan and directing the Division to provide those survivor benefits, fees and costs. Around the same time, S.L.W. states she received a letter dated April 11, 2014 from a Pensions Benefit Specialist at the Division stating S.L.W.'s application was effectively time-barred because her father's retirement predated S.L.W.'s disability.

In late June 2014, Michael Weik, Division Manager of Operations, wrote to S.L.W. outlining the Division's interpretation of the term "child" as "someone who at the time of emancipation could not be gainfully employed as a result of a physical or mental disability they incurred prior to their emancipation." The letter reasoned because S.L.W. had been emancipated and employed, she did not meet that definition of "child." Notably, the letter

5

concluded that even if the Division's interpretation of "child" was incorrect, S.L.W. was still bound to prove dependency under N.J.A.C. 17:4-3.7 and advised S.L.W. she could appeal the finding to the PFRS Board of Trustees (Board).

In July 2014, S.L.W. filed a letter-appeal disputing the Division's explanation that she must provide tax returns showing J.R.W. had claimed her as a dependent and stressing the Division's failure to provide her and her father notice of the requirement. S.L.W. requested the matter be referred to the Office of Administrative Law (OAL) to establish a record.

The Board held a hearing on the matter in early August 2014 and decided S.L.W. did not qualify for survivor benefits. The Board found S.L.W. did not meet the definition of "child," that is, "someone [who] at the time of emancipation . . . could not be gainfully employed as a result of a physical or mental disability they incurred prior to their emancipation." The Board also noted the lack of income tax forms showing any legal dependency on J.R.W. Nevertheless, the Board referred the matter to the OAL for an evidentiary hearing.

B.

After the matter was assigned to an Administrative Law Judge (ALJ), S.L.W. and the Division cross-moved for summary judgment. The ALJ heard

6

oral argument and then issued a written decision on October 7, 2016. The ALJ acknowledged that the "literal reading" of N.J.S.A. 43:16A-1(21)(d)'s definition of "child" supports S.L.W.'s argument, but found, without more, the literal interpretation "appears to run afoul of legislative objectives and public policy."

In considering whether the PFRS statute has a dependency requirement, the ALJ drew support from divergent statutes, both of which require a showing of dependency for adult children with disabilities -- the Federal Social Security Act, 42 U.S.C. § 402(d), and N.J.S.A. 2A:34-23, which governs child-support orders. Although the ALJ reviewed statutes concerning adult children, he ultimately determined N.J.S.A. 43:16A-1(21)(d)'s definition of child should be limited to children whose disabilities predate their emancipation.

Rejecting S.L.W.'s argument that the Division should be estopped from enforcing N.J.A.C. 17:4-3.7's tax return proof requirement, the ALJ found the regulation was not arbitrary, capricious, or unreasonable in nature. The ALJ concluded S.L.W. did not qualify as a "child" under N.J.S.A. 43:16A-1(21)(d) because she was emancipated before she became disabled and could not show financial dependency on J.R.W.

The ALJ granted the Division's motion for summary judgment, denied S.L.W.'s motion for summary judgment, and dismissed S.L.W.'s appeal.

7

In November 2016, the Board adopted the recommendations of the ALJ, affirming S.L.W.'s ineligibility for survivor benefits.

## C.

S.L.W. appealed the Board's decision. The Appellate Division affirmed in part in an unpublished per curiam opinion.

The Appellate Division agreed with the ALJ's determination that S.L.W. did not properly establish dependency. The Appellate Division rejected S.L.W.'s argument about N.J.A.C. 17:4-3.7(a), finding the Division's enactment of the regulation requiring the submission of income tax returns was valid under the enabling statute. It was not arbitrary, capricious, or unreasonable because it augments the legislative policy of the PFRS statute. Consequently, the Appellate Division concluded S.L.W.'s claim should fail due to her inability to comply with N.J.A.C. 17:4-3.7(a).

Also, for the sake of completeness, the Appellate Division addressed the issue of whether S.L.W. qualified as a "child" under N.J.S.A. 43:16A-1(21)(d) based on the emancipation requirement the ALJ and the Division found implicit in the statute. Conducting an analysis under Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313 (1984), the Appellate Division found the imposed requirement that child-beneficiaries not be emancipated "was not predictable or fair, thereby requiring formal rulemaking procedures

8

and public notice." As such, the court found the ALJ erred in finding S.L.W.'s emancipation disqualified her as a "child" under N.J.S.A. 43:16A-1(21)(d).

We granted S.L.W.'s petition for certification. 236 N.J. 217 (2018).

## II.

S.L.W. argues she is entitled to survivor benefits as she has met the definition of "child" under N.J.S.A. 43:16A-1(21). Further, S.L.W. asserts the Division's regulatory requirement of tax returns to establish dependency is incompatible with the statute. Finally, S.L.W. alternatively suggests the Division failed to provide proper public notice of the dependency requirement, citing materials prepared by the Division which neglect to mention the income tax return requirement. S.L.W. contends had J.R.W. been aware of the tax return dependency requirement during his lifetime, he would have taken the necessary steps to ensure S.L.W. could comply and receive survivor benefits.

The Division asserts S.L.W. is ineligible for survivor benefits because she is not a "child" under N.J.S.A. 43:16A-1(21) and is unable to demonstrate dependency on J.R.W. through the provision of his income tax returns as is required by N.J.A.C. 17:4-3.7. The Division notes the Board is charged with administering the PFRS fund and contends it acted within its authority in promulgating the associated regulations, including N.J.A.C. 17:4-3.7. The Division emphasizes policy concerns with S.L.W.'s interpretation of the

9

statute, namely that it could produce absurd results and a depletion of the PFRS fund.

The Division did not cross-petition this Court for certification, so the issue of whether S.L.W. is disqualified from collecting survivor benefits because her emancipation predated her disability is not before the Court.

## III.

Board decisions are afforded a deferential standard of review and will be reversed only if "there is a clear showing that [the decision] is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Mount v. PFRS, 233 N.J. 402, 418 (2018) (quoting Russo v. PFRS, 206 N.J. 14, 27 (2010)). Still, we are not "bound by an agency's interpretation of a statute or its determination of a strictly legal issue, particularly when that interpretation is inaccurate or contrary to legislative objectives." Id. at 418-19 (internal quotations omitted) (quoting Russo, 206 N.J. at 27).

We presume agency regulations "are both 'valid and reasonable,'" unless and until "the party challenging a regulation . . . prov[es] that the agency's action was 'arbitrary, capricious or unreasonable.'" N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 548 (2012) (first quoting N.J. Soc'y for the Prevention of Cruelty to Animals v. Dep't of Agric., 196 N.J. 366, 385 (2008);

10

then quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).  We consider:

> (1) whether the agency's action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.
>
> [Ibid. (quoting In re Petitions for Rulemaking, N.J.A.C. 10:82-1.2 & 10:85-4.1, 117 N.J. 311, 325 (1989)).]

Adopted regulations are ordinarily not declared invalid absent one of those circumstances.  Id. at 549.

In considering an agency's adoption of regulations, we will "look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives."  Ibid. (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562 (1978)).  Our examination of both the enabling statute and the law in its entirety is guided by our duty "to determine and effectuate the Legislature's intent."  Allen v. V & A Bros., Inc., 208 N.J. 114, 127 (2011) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009)).  "[G]enerally, the best indicator of that intent is the statutory language."  DiProspero v. Penn, 183 N.J. 477, 492 (2005).  If the statutory language is

11

clear, our inquiry ends; if ambiguity persists, we turn to extrinsic evidence.

Richardson v. PFRS, 192 N.J. 189, 195 (2007) (citing DiProspero, 183 N.J. at 492).

IV.

A.

PFRS is a retirement system created to "provid[e] retirement allowances and other benefits for policemen and firemen." N.J.S.A. 43:16A-2. "PFRS not only provides for the financial well-being of retired police and firemen, but also ensures financial stability for their surviving spouses and children." Saccone v. PFRS, 219 N.J. 369, 379 (2014). PFRS does so by allowing for survivor benefits for certain family members of a retiree in the system:

> Upon the death after retirement of any member of the retirement system there shall be paid to the member's widow or widower a pension of 50% of final compensation for the use of herself or himself, to continue during her or his widowhood, plus 15% of such compensation payable to one surviving child or an additional 25% of such compensation to two or more children; if there is no surviving widow or widower or in case the widow or widower dies or remarries, 20% of final compensation will be payable to one surviving child, 35% of such compensation to two surviving children in equal shares and if there be three or more children, 50% of such compensation would be payable to such children in equal shares.
>
> [N.J.S.A. 43:16A-12.1(a).]

12

Once again, "child" is defined in the PFRS pension scheme as

> a deceased member's or retirant's unmarried child (a) under the age of 18, or (b) 18 years of age or older and enrolled in a secondary school, or (c) under the age of 24 and enrolled in a degree program in an institution of higher education for at least 12 credit hours in each semester, provided that the member died in active service as a result of an accident met in the actual performance of duty at some definite time and place, and the death was not the result of the member's willful misconduct, or (d) <u>of any age who, at the time of the member's or retirant's death, is disabled because of an intellectual disability or physical incapacity, is unable to do any substantial, gainful work because of the impairment and [her or] his impairment has lasted or can be expected to last for a continuous period of not less than 12 months, as affirmed by the medical board</u>.
>
> [N.J.S.A. 43:16A-1(21) (emphasis added).]

The statute includes an enabling clause allowing the State Treasurer, with advice from the Division and related parties, to "promulgate any rules and regulations necessary to accomplish the purposes of this act." N.J.S.A. 43:16A-16.16. One such enacted regulation provides:

> (a) Proof of dependency shall be established by the filing of an affidavit of dependency, supported by the deceased and the claimant's income tax returns, for the period immediately preceding the death or accident.
>
> (b) A parent will be deemed to be dependent on the member if they were accepted as dependents of the member for Federal income tax purposes.
>
> [N.J.A.C. 17:4-3.7.]

13

B.

We have previously considered PFRS survivor benefits in Saccone, 219 N.J. 369. A retired member of PFRS sought to ensure his son would be able to receive his future survivor benefits through a special needs trust (SNT). Id. at 372-73. The son had a severe mental disability and receiving the survivor benefits directly would jeopardize his eligibility for Supplemental Security Income (SSI) benefits. Ibid.

We emphasized the "recognized strong public policy favoring the financial protection of a public employee's family," including protecting "a public employee's ability to provide adequately for the well-being of his disabled child after his death." Id. at 382. Accordingly, we concluded, "the survivor benefits statute, like the entire PFRS pension scheme, should be interpreted in light of its remedial character. The statute should be construed in a manner that furthers its fundamental purpose." Id. at 387.

Noting a "rigid" reading of N.J.S.A. 43:16A-12.1 would serve only to harm "the very people [the statute] was intended to help," we held the survivor benefits could be paid into a SNT and "the Board's contrary determination . . . was arbitrary, capricious, and unreasonable." Id. at 387-88. We further our analysis here with the Saccone decision in mind.

14

## C.

We owe a certain measure of deference to a government agency's interpretation of a legislative scheme it is entrusted to execute, but government agencies are "expected to administer the scheme with the underlying legislative policies foremost in mind. That principle applies in force when [as here] the legislative scheme is remedial in nature." Id. at 385.

Keeping New Jersey's "strong public policy favoring the financial protection of a public employee's family," including "a public employee's ability to provide adequately for the well-being of his disabled child after his death," id. at 382, at the forefront of our minds, we examine the plain language of the statute. N.J.S.A. 43:16A-12.1 makes survivor benefits available to a member's widow or widower and/or surviving children. Four sub-categories of "a deceased member's . . . unmarried children" qualify as a "[c]hild"; the category relevant here is defined based on the child's inability to do "any substantial, gainful work" due to the child's disability status "at the time of the member's or retirant's death." N.J.S.A. 43:16A-1(21)(d).

As the ALJ noted -- and subsequently discarded -- the "literal reading" of N.J.S.A. 43:16A-1(21)(d) supports S.L.W.'s argument: the plain language definition of "child" makes no mention of any dependency requirement for survivor benefits. Instead, the statute requires someone in S.L.W.'s position to

15

demonstrate they: (1) are the child of a deceased member or retirant; (2) are unmarried; (3) are "disabled because of an intellectual disability or physical incapacity" "at the time of the member's or retirant's death"; (4) have an impairment that "has lasted or can be expected to last for a continuous period of not less than 12 months, as affirmed by the medical board"; and (5) are "unable to do any substantial, gainful work because of the impairment." Ibid.

We are obliged to interpret the statutory language here "in light of [the PFRS pension scheme's] remedial character." Saccone, 219 N.J. at 387. The PFRS's survivor benefits statute manifests a strong commitment to the financial well-being of a deceased PFRS member's or retirant's surviving spouse and children. Correspondingly, the inclusion of N.J.S.A. 43:16A-1(21)(d), specifically providing for children with disabilities and impairments that inhibit a child's ability to work, demonstrates the PFRS scheme's desire to use the delayed compensation benefits earned by members of PFRS to support their family members with disabilities. We see nothing in the statute's plain language that requires the Division to limit those protections.

The plain language of the statute, viewed through the lens of the statute's commitment to provide for the financial security of a retirant's surviving children with disabilities, is sufficient to end this inquiry.

16

Nevertheless, a brief review of the legislative history of N.J.S.A. 43:16A-12 and its related definitions underscores the fact that the absence of a dependency requirement was an intentional choice of the Legislature. The PFRS statute's definition of "child" has never included a dependency requirement. That starkly contrasts with its definitions of certain other family members, which have included such a requirement. The evolution of the PFRS statute further reflects the Legislature's intention to loosen the eligibility requirements for survivor benefits for the welfare of spouses and children.

The original PFRS statute "permitted PFRS members to elect one of three optional retirement plans . . . and to designate any beneficiary as the recipient of the benefit." Saccone, 219 N.J. at 379 (citing; L. 1944, c. 255 (codified at N.J.S.A. 43:16A-12; repealed 1967). The Legislature replaced that original statute in 1967 with "N.J.S.A. 43:16A-12.1, which eliminated the three optional retirement plans in lieu of a life annuity automatically payable to the PFRS member's surviving spouse and children." Id. at 379 (citing L. 1967, c. 250, § 26); see also L. 1967, c. 250, § 31.

The 1967 statute defined what criteria a member's surviving family had to meet to qualify for benefits. The definition for child stated:

> "Child" shall mean a deceased member's unmarried child either (a) under the age of 18 or (b) of any age who, at the time of the member's death, is disabled because of mental retardation or physical incapacity, is

17

unable to do any substantial, gainful work because of the impairment and his impairment has lasted or can be expected to last for a continuous period of not less than 12 months, as affirmed by the medical board.

[L. 1967, c. 250, § 1.]

There was no dependency requirement in the definition's plain language. In contrast, the 1967 statute's definitions for "dependent parent" and "dependent widower" expressly required parents and widowers to prove dependency based on the amount of financial support received from the member before death. Ibid.

In 1971, the Legislature removed the word "dependent" throughout the statute wherever it appeared before "parent" or "widower," but the Legislature did not delete the dependency requirements contained in the definitions of parent or widower or add explicit dependency requirements for widows or children. See, e.g., L. 1971, c. 175, §§ 1, 16.

The 1985 Legislature expanded the PFRS statute's definition of "child" to encompass more individuals. L. 1985, c. 525, § 1. It did not, however, alter the section discussing children with disabilities. Ibid. As the legislative history explains, the 1985 amendment served "to expand the class of persons eligible, as children of a deceased PFRS member or retirant, for survivor benefits under the retirement system," beyond its coverage at the time of "any such surviving child who is under the age of 18 or disabled." A. State Gov't,

18

Civil Serv., Elections, Pensions & Veterans Affairs Comm. Statement to S. 729 (L. 1985, c. 525) (emphasis added).

In 1996, the Legislature eliminated the dependency requirement for widowers, bringing the "widower" definition in line with the definition of "widow." L. 1996, c. 89, § 1. The definition of "parent" is the only one that continues to have a dependency requirement. The Legislature has never imposed such a requirement on the children of PFRS members.

The history of the regulation at issue here, N.J.A.C. 17:4-3.7, mirrors the statute's history. It was originally adopted in 1975 and codified at N.J.A.C. 17:4-1.10. 7 N.J.R. 393(a) (Aug. 7, 1975); 7 N.J.R. 238(a) (May 8, 1975). Section (a) is identical to its current version, while section (b) originally applied to widowers as well as parents. N.J.A.C. 17:4-1.10 (1975). In 2000, the regulation was recodified at N.J.A.C. 17:4-3.7, and the Board deleted the references to "widowers" "because a widower no longer must prove dependency to receive a surviving spouse benefit." 32 N.J.R. 4060(a) (Nov. 20, 2000).

As the PFRS statute stands today, the absence of any dependency language in the statute's longstanding definition of "child" is striking when considered alongside the definition of "parent":

> the parent of a member <u>who was receiving at least one-half of his support</u> from the member in the 12-month

19

period immediately preceding the member's death or the accident which was the direct cause of the member's death. The <u>dependency</u> of such a parent will be considered terminated by marriage of the parent subsequent to the death of the member.

[N.J.S.A. 43:16A-1(22) (emphases added).]

The history of the family member definitions and the present-day plain language of those definitions demonstrate that the Legislature knows how to impose a clearly defined dependency requirement when it so desires. So, it is implausible to impute a dependency requirement to qualify as a child when the law expressly outlines that requirement only for parents. We decline to conclude the statute's definition of child holds any implied, presumed, or suggested dependency requirement.

We hold that N.J.S.A. 43:16A-1(21) creates no dependency requirement for children who may qualify for survivor benefits under N.J.S.A. 43:16A-12.1. Flowing from that finding, the Division's implementation of its contrary interpretation of the statute through its denial of S.L.W.'s appeal on the basis of her presumed ineligibility was arbitrary, capricious, and unreasonable.

Here, there has been no demonstration that this plain language approach to the statute developed by the Legislature can lead to an absurd result. If such potential is demonstrated in the future, it may be resolved through use of, and

analysis within, the canons of interpretation.  See DiProspero, 183 N.J. at 492-93.

We cannot, on the record developed before this Court, find S.L.W. eligible for survivor benefits as she has not yet had the opportunity to prove she meets all the requirements for those benefits.  As such, this matter must be remanded to determine whether S.L.W. is otherwise eligible for survivor benefits.

## V.

We reverse the judgment of the Appellate Division and remand to the Board for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE'S opinion.

21