**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0127-23

MODSL, INC.,

    Petitioner-Appellant,

v.

NEW JERSEY MOTOR
VEHICLE COMMISSION,

    Respondent-Respondent.

_____

Argued June 4, 2024 – Decided July 23, 2024

Before Judges Sumners, Smith and Perez Friscia.

On appeal from the New Jersey Motor Vehicle Commission.

Lloyd D. Levenson argued the cause for appellant (Cooper Levenson, PA, attorneys; Lloyd D. Levenson and Jennifer B. Barr, on the briefs).

Jennifer R. Jaremback, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sara M. Gregory, Assistant Attorney General, of counsel; Jennifer R. Jaremback, on the brief).

PER CURIAM

Appellant MODSL, Inc. appeals from the Motor Vehicle Commission's (MVC's) August 9, 2023 final agency decision denying its application for a new motor vehicle dealership license. The MVC denied MODSL's application solely on the basis of having an improper proposed place of business pursuant to N.J.S.A. 39:10-19. On appeal, MODSL argues: the MVC erred in its interpretation of the statutory language "consisting of a permanent building" as requiring a separate distinct stand-alone building; alternatively, averring that collateral estoppel requires the MVC approve its application. We reverse for the reasons that follow.

MODSL, a Harley Davidson motorcycle franchisee, executed an asset purchase agreement with SJM Motorcycles, LLC (SJM) and signed a long-term lease at 136 Monmouth Road in West Long Branch (the property) in December 2022. This location was SJM's former site. Since 2019, SJM had occupied a 26,000 square foot unit within a commercial property with space for one additional business. A K-Mart had leased the adjacent commercial space until the store closed in 2020. The space adjacent to SJM has remained vacant since K-Mart's departure. Prior to MODSL's asset purchase, the MVC granted SJM a conditional waiver of "the firewall rule," N.J.A.C. 13:21-15.4(d), concluding

that the concrete masonry wall separating the two units was an acceptable alternative to a firewall.

Shortly after its purchase, MODSL applied with the MVC for a new motor vehicle dealer license and listed the property as its proposed place of business. The MVC denied the application. In its final administrative decision (FAD), the MVC reasoned that:

> As amended, the statutory language creates a clear distinction between the physical requirements for new and used dealerships. The amended statute requires new dealerships maintain a location <u>consisting of a permanent building</u>, while used dealerships can maintain a location <u>within a permanent enclosed building</u>. There are also different square footage requirements for new and used dealerships. The Legislature's use of different language describing the building requirements for the two different types of dealerships demonstrates its intent that new and used dealerships be treated differently in this regard. Also, the previous version of the statute did not make any distinction between the building location requirements for new and used dealerships. When read together, it is clear that the Legislature's choice of the language "consisting of" signifies that the new dealership must be the only business in that particular location, while its choice of the word "within" demonstrates that used dealerships may share a location and need not be the only business occupying the building.
>
> . . . .
>
> The amendment makes clear that applicants for a new motor vehicle dealer license, such as MODSL, are

prohibited from operating within a permanent building, shared by other businesses.

MODSL appealed the FAD.

Our role in reviewing final agency determinations is limited. Allstars Auto. Grp., Inc. v. N.J. Motor Vehicle Com'n, 234 N.J. 150, 157 (2018). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., PFRS, 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)).

"A reviewing court 'must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field.'" Id. at 158 (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009)). "However, when an agency's decision is based on the 'agency's interpretation of a statute or its determination of a strictly legal issue,' we are not bound by the agency's interpretation." Caucino v. Bd. of Trustees, Teachers' Pension & Annuity Fund, 475 N.J. Super. 405, 412 (App. Div. 2023) (quoting Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014)). "Statutory interpretation involves the examination of legal issues and is, therefore, a question of law subject to de novo review." Ibid.

A-0127-23

When engaging with the meaning of a statute "our role 'is to discern and effectuate the intent of the Legislature.'" Ibid. "[G]enerally, the best indicator of that intent is the statutory language." S.L.W. v. N.J. Div. of Pensions & Benefits, 238 N.J. 385, 394 (2019) (alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "If the statutory language is clear, our inquiry ends." Id. at 394–95 (citing Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195 (2007)). "However, if a statute's seemingly clear language nonetheless creates ambiguity in its concrete application, extrinsic evidence may help guide the construction of the statute." Saccone, 219 N.J. at 380 (citing In re Kollman, 210 N.J. 557, 568 (2012)). "Extrinsic guides may also be of use 'if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme.'" Id. at 380–81 (quoting Wilson by Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012)).

On appeal, MODSL argues that the MVC misinterpreted the 2022 amendment language of N.J.S.A. 39:10-19. More specifically, it contends that the 2022 amendment language only affects used vehicle dealers, and as such, does not prohibit a new vehicle dealer from operating in a multi-unit building. (Emphasis added).

The MVC's position is that the amendment shows "the Legislature intended to impose distinct physical requirements, aside from square footage, upon new and used dealers,"—as evidenced by using "consisting of," when imposing regulation on new vehicle dealerships, as opposed to "within," which it used when imposing regulation on used vehicle dealerships. When applying this interpretation to an applicant's use of a multi-unit dwelling, the MVC found that the specific language of the statute supports the inference "that used dealers may be located within a multi-unit building, such as a shopping center or mall, while new dealers must be located in a separate stand-alone building." We are unpersuaded by the MVC's interpretation of the statute and are not bound by it. See Caucino, 475 N.J. Super. at 412. We turn to the legislation.

The Motor Vehicle Certificate of Ownership Law (MVCOL), N.J.S.A. 39:10-1 to -38, was enacted "to regulate and control titles to, and possession of, all motor vehicles in this state, so as to prevent the sale, purchase, disposal, possession, use or operation of stolen motor vehicles, or motor vehicles with fraudulent titles, within this state." Allstars Auto Grp., Inc. v. New Jersey Motor Vehicle Comm'n, 234 N.J. 150, 159 (2018) (quoting N.J.S.A. 39:10-3). N.J.S.A. 39:10-19 is a section of the law which specifically regulates the licensing system

6                                                          A-0127-23

including a dealer's eligibility, the renewal process, and associated fees. Section 10-19 was most recently amended by the Legislature on January 18, 2022.

The amendment accounts for the distinction between a new and used motor vehicle dealer in a several relevant ways:

> Each applicant for a <u>new motor vehicle dealer license</u> shall at the time such license is issued have established and maintained, or by that application shall agree to establish and maintain, within 90 days after the issuance thereof, a place of business consisting of a permanent building not less than 1,000 square feet in floor space located in the State of New Jersey to be used principally for the servicing and display of motor vehicles with such equipment installed therein as shall be requisite for the servicing of motor vehicles in such manner as to make them comply with the laws of this State and with any rules and regulations made by the board governing the equipment, use, and operation of motor vehicles within the State.
>
> [N.J.S.A. 39:10-19 (emphasis added).]

The amendment also added the following language to the provision:

> Any person who possesses a <u>used motor vehicle dealer license</u> at the time of enactment of <u>P.L.</u> 2021, <u>c.</u> 484 shall maintain an established place of business consisting of a minimum office space of 72 square feet within a permanent, enclosed building located in the State of New Jersey, in addition to complying with all other applicable regulations prescribed by the chief administrator.
>
> Each applicant for a used motor vehicle license, or any licensee who relocates its place of

business on or after the effective date of P.L. 2021, c. 484,1 shall meet the requirements for an established place of business for a used motor vehicle dealer, which shall be established by the chief administrator by regulation adopted pursuant to the "Administrative Procedure Act," P.L. 1968, c. 410 (C.52:14B-1 et seq.).

An established place of business of a new motor vehicle dealer or a used motor vehicle dealer shall display an exterior sign permanently affixed to the land or building, which sign is consistent with local ordinances and has letters easily readable from the major avenues of traffic. The sign shall include the dealer name or trade name, provided such trade name has been previously disclosed to the chief administrator.

[Ibid. (emphasis added).]

With this in mind, we consider how the amendment affects an applicant's proposed business location. Prior to the amendment, both new and used dealers were required to have "a place of business consisting of a permanent building not less than 1,000 square feet . . . to be used principally for the servicing and display of motor vehicles." However, the amendment makes this requirement applicable to only new vehicle dealer applicants. For used vehicle dealer applicants, the Legislature adds multiple paragraphs. It requires that used vehicle dealers "maintain an established place of business consisting of a minimum office space of 72 square feet within a permanent, enclosed building located in the State of New Jersey," and "shall meet the requirements for an

8

established place of business for a used motor vehicle dealer, which shall be established by the chief administrator by regulation adopted pursuant to the 'Administrative Procedure Act.'" Ibid. (emphasis added).

The legislative intent of this amendment is further clarified when looking to the relevant regulation under Title 13 and its proposed amendment:

> N.J.A.C. 13:21-15.4 [Established place of business] is proposed for amendment to conform the established place of business requirements for new and used motor vehicle dealers to the recently amended N.J.S.A. 39:10-19 and to confirm the Commission's intent to continue the longstanding firewall requirement for used car dealers that share space in a building with another business or other businesses.
>
> [55 N.J.R. 1367(a) (proposed July 17, 2023) (emphasis added).]

The "firewall rule" is established by N.J.A.C. 13:21-15.4(d) and states in relevant part:

> A proposed place of business will not be considered suitable for approval if there already exist one or more licenses issued for, or other business entities present at, the same premises . . . . A proposed place of business is deemed to occupy the same premises as another dealership if the two facilities: (1) [a]re not completely separated by exterior walls or a firewall . . . .

When reading the amendment in the context of the corresponding regulations, it is clear that the Legislature was addressing the distinct needs of

new and used vehicle dealers. The MVC's interpretation of the statute stretches far beyond the legislative intent and reads too much into the use of the phrases "consisting of a permanent building" for new vehicle dealers and "within a permanent enclosed building" for used vehicle dealers. Interpreting this minor difference as meaning new vehicle dealers can no longer occupy a shared location is unsupported by any legislative intent or plain reading of the statute. We conclude barring MODSL from licensure on this basis alone was error by the MVC. Because we arrive at our conclusion on statutory interpretation grounds, we do not reach MODSL's collateral estoppel argument.

Consequently, we reverse the final agency decision and remand this matter to the MVC to consider MODSL's application for a new motor vehicle dealer license in light of our interpretation of the statute.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0127-23