NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0963-22

IN RE ADOPTION OF
N.J.A.C. 5:105-1.6(a)(1).

_____

> APPROVED FOR PUBLICATION
>
> **August 12, 2024**
>
> **APPELLATE DIVISION**

Argued January 24, 2024 – Decided August 12, 2024

Before Judges Accurso, Vernoia and Walcott-Henderson.[1]

On appeal from the New Jersey Department of Community Affairs, Government Records Council.

CJ Griffin argued the cause for appellant Libertarians for Transparent Government (Pashman Stein Walder Hayden, PC, attorneys; CJ Griffin, on the briefs).

Steven M. Gleeson, Deputy Attorney General, argued the cause for respondent Government Records Council (Matthew J. Platkin, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Steven M. Gleeson, on the brief).

The opinion of the court was delivered by

VERNOIA, J.A.D.

---

[1] Judge Walcott-Henderson did not participate in the oral argument but participated in rendering this decision with the consent of the parties. R. 2:13-2(b).

In this appeal Libertarians for Transparent Government (LFTG) challenge the validity of N.J.A.C. 5:105-1.6(a)(1), a regulation providing that all "submissions" made to the Government Records Council (GRC) during its adjudication of a denial-of-access complaint under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, "shall not be considered government records subject to public access pursuant to" OPRA "during the pendency of [the] adjudication."[2] LFTG contends N.J.A.C. 5:105-1.6(a)(1) is arbitrary, capricious, and unreasonable because it is inconsistent with OPRA and contravenes the statute's legislative purposes. We agree and find N.J.A.C. 5:105-1.6(a)(1) invalid.

To place our discussion of LFTG's challenge to the regulation in context, we first explain the process the GRC employs in adjudicating denial-of-access complaints and detail the "submissions" made during the adjudication of those complaints. We then explain the GRC's adoption of N.J.A.C. 5:105-1.6(a)(1) and its effect on a requestor's ability to obtain government records from the GRC. Last, we address and decide LFTG's challenge to the regulation.

---

[2] We decide the issues presented on appeal based on the version of OPRA extant at the time of our decision. We recognize the Legislature enacted amendments to OPRA following the filing of the parties' briefs and the oral argument on this appeal, see L. 2024, c. 16, but the amendments are not effective until September 3, 2024, L. 2024, c. 16, § 12, and the parties have not asserted the amendments should govern in any manner the disposition of the issues raised on appeal.

I.

The Legislature enacted OPRA "'to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'"  Simmons v. Mercado, 247 N.J. 24, 38 (2021) (quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)).  "The law's core concern is to promote transparency in government."  Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 141 (2022).

OPRA allows citizens of this State access to government records, N.J.S.A. 47:1A-1, defines the government records a public agency must provide to a citizen requesting them, N.J.S.A. 47:1A-1.1, and imposes strict time limits during which a public agency must provide requested government records, N.J.S.A. 47:1A-5(i).  OPRA's mission is "to make government records 'readily accessible' to the state's citizens," by providing "that 'all government records shall be subject to public access unless exempt.'"  Simmons, 247 N.J. at 38 (citations omitted) (quoting Gilleran v. Twp. of Bloomfield, 227 N.J. 159, 170 (2016)).

The GRC is a public agency established under OPRA.  N.J.S.A. 47:1A-7.  As a public agency, the GRC is also subject to OPRA's requirements.  See, e.g., Libertarians for Transparent Gov't v. Gov't Recs. Council, 453 N.J. Super. 83, 89-93 (App. Div. 2018) (analyzing under OPRA the GRC's denial of a

request for government records). Thus, the GRC is obligated to comply with OPRA's requirements and provide government records in accordance with the statute in the same manner as any other public agency.

One of the GRC's core functions as a public agency is to "receive, hear, review, and adjudicate a complaint filed by any person concerning a denial of access to a government record by a records custodian." N.J.S.A. 47:1A-7(b). Complaints filed with the GRC challenging a public agency's denial of a request for government records under OPRA are referred to as "denial-of-access" complaints. See, e.g., Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 290 (2017) (describing the complaint filed with the GRC challenging a public agency's denial of access to government records a "denial-of-access complaint"); Underwood Props., LLC v. City of Hackensack, 470 N.J. Super. 202, 210 (App. Div. 2022) (noting the GRC provides a "[d]enial[-]of[-][a]ccess complaint form" to individuals challenging a public agency's denial of access to government records under OPRA). In the performance of its essential functions, the GRC is required to consider, resolve, and adjudicate denial-of-access complaints arising from disputes over whether a public agency has properly denied a request for government records under OPRA. N.J.S.A. 47:1A-7(e); see also N.J.A.C. 5:105-1.5(a)(1)

4

(providing the GRC's powers and duties include "[a]djudicat[ing] complaints filed . . . regarding access to government records").

Under OPRA parlance, a citizen who "delivers to a public agency an OPRA request to copy, examine, or inspect a government record pursuant to the" statute is defined as a "requestor." N.J.A.C. 5:105-1.3. Where a public agency denies an OPRA request for government records, the requestor may challenge the denial in one of two available forums. A requestor claiming a public agency wrongfully denied access to a government record under OPRA may "institute a proceeding . . . by filing an action in Superior Court" or, in "lieu of filing an action in Superior Court," may "file a complaint with the" GRC. N.J.S.A. 47:1A-6.

The adjudication of a denial-of-access complaint filed with the GRC requires and involves various "submissions" made to the GRC during the adjudication process. And it is the GRC's adoption of N.J.A.C. 5:105-1.6(a)(1), which provides that all such submissions are not government records subject to public access under OPRA during the pendency of an adjudication before the GRC, that LFTG challenges on appeal. As such, we describe the "submissions" the GRC has determined, by its adoption of N.J.A.C. 5:105-1.6(a)(1), shall not be government records subject to disclosure under OPRA during the adjudication of a denial-of-access complaint.

5

A requestor challenging in the GRC a public agency's denial of access must first file a written "denial[-]of[-]access complaint . . . on a form authorized by the [GRC] in which [the] requestor claims that a custodian has unlawfully denied the requestor access to a government record." N.J.A.C. 5:105-1.3; N.J.A.C. 5:105-2.1(a); N.J.A.C. 5:105-2.3(a). If the GRC determines any portion of the complaint falls outside its jurisdiction, or is otherwise frivolous or without a factual basis, it must "reduce its determinations to writing and transmit a copy thereof to the complainant and to the [records] custodian against whom the complaint was filed pursuant to N.J.S.A. 47:1A-7(e)." N.J.A.C. 5:105-2.1(d).

In addition to the denial-of-access complaint filed by the requestor, there are other submissions the GRC regulations permit or require during the adjudication of a denial-of-access complaint. The GRC may request that the parties—the requestor, the records custodian, and any intervenors in the proceeding—"produce documents and legal certifications to the facts and/or arguments presented with respect to [the] matters" before the GRC. N.J.A.C. 5:105-2.1(f). The regulations further provide that "[d]iscovery" in a denial-of-access proceeding "shall be limited to the submissions of the parties submitted to the" GRC. N.J.A.C. 5:105-2.1(g).

A-0963-22

"All submissions" to the GRC during a denial-of-access proceeding "must be in writing." N.J.A.C. 5:105-2.3(b). The requestor is required to include in the "complaint or the attachments thereto any information, issues, and arguments the complainant wishes to bring to the [GRC's] attention," and the "complaint may also include any attachments, affidavits, certifications, or other documentation deemed relevant or supportive of the allegations set forth in the complaint." N.J.A.C. 5:105-2.3(e).

A complaint may also be amended in writing. N.J.A.C. 5:105-2.3(g). The complaint, any amended complaint, and the public agency's responses to a complaint must be served on the GRC and all parties. N.J.A.C. 5:105-2.3(g) to (h). And the GRC may require that the parties submit additional information it deems necessary to adjudicate the complaint. N.J.A.C. 5:105-2.3(i).

N.J.A.C. 5:105-2.4 details the submissions the custodian of a government record—that is, the public agency's records custodian—must make to the GRC in a denial-of-access proceeding. The records custodian must file a response to the complaint by completing a statement of information form prescribed by the GRC, and all the custodian's submissions to the GRC during the proceeding shall be in writing. N.J.A.C. 5:105-2.4(a), (b).

The custodian must serve copies of all submissions to the requestor, N.J.A.C. 5:105-2.4(h), and the GRC is authorized to require that the custodian

7

submit additional information the GRC deems necessary to adjudicate the denial-of-access complaint, N.J.A.C. 5:105-2.4(m).  The requestor is permitted to submit a reply to the custodian's response to the complaint and the custodian is permitted to submit a sur-reply.  N.J.A.C. 5:105-2.4(n).

The GRC regulations further provide that "[t]he complainant and custodian" of the requested government records "shall always be parties to the complaint," and they "shall be notified of all decisions or orders issued" by the GRC.  N.J.A.C. 5:105-2.2(a).  Others who are not "initially a party" to the denial-of-access proceeding, but who have "a statutory right to intervene or will be substantially, specifically, and directly affected by the outcome of a" contested case, may submit a motion to intervene in the proceeding, N.J.A.C. 5:105-2.2(b)(1), and the parties may submit opposition to a motion to intervene, N.J.A.C. 5:105-2.2(b)(2).  Thus, during the adjudication of a denial-of-access complaint, the requestor and records custodian, as well as any intervenors, will be served with, and have access to, all the submissions served or filed in the denial-of-access proceedings.

Unless the denial-of-access complaint is resolved through mediation, see N.J.A.C. 5:105-2.5, or otherwise, the GRC shall consider the parties' submissions and adjudicate the claims made in the complaint.  In rendering its decision, the GRC members "shall review the findings and recommendations

of the Executive Director, as well as all party submissions" and vote at an open public meeting. N.J.A.C. 5:105-2.6(a); N.J.A.C. 5:105-2.1(j). The GRC is required to issue its decision to the parties and post its decision online. N.J.A.C. 5:105-2.6(d).

If the GRC is unable to reach a decision on a denial-of-access complaint based on the submissions, it may refer the matter to another state agency, the Office of Administrative Law, for a hearing as a contested case under the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -15, and the Uniform Administrative Procedure Rules, N.J.A.C. 1:1-1.1 to -21.6. N.J.A.C. 5:105-2.7.

In sum, the GRC's adjudication of a denial-of-access complaint constitutes one of its essential roles as a public agency and involves its consideration of numerous submissions by the requestor, the records custodian of the public agency the requestor claims wrongfully denied access to government records under OPRA, and any individual, entity, or public agency that is granted leave to intervene in the denial-of-access proceeding. As we explain, the challenged regulation, N.J.A.C. 5:105-1.6(a)(1), provides that all such submissions made to the GRC during the performance of its essential adjudicatory function shall not be deemed government records subject to

9

public access under OPRA until the final disposition of the denial-of-access complaint.

## II.

On May 16, 2022, the GRC published in the New Jersey Register a rule proposal for the readoption of rules, repeal of certain rules, and adoption of new rules. See 54 N.J.R. 809(a) (May 16, 2022). Included was a proposed new regulation to be set forth at N.J.A.C. 5:105-1.6, stating in pertinent part:

> (a) In addition to records designated as confidential pursuant to the provisions of [OPRA], . . . the following records shall not be considered government records subject to public access pursuant to [OPRA]:
>
> 1. Denial[-]of[-]access complaint submissions, including, but not limited to, statements of information and sur-replies during the pendency of an adjudication by the [GRC]. . . .
>
> [Ibid.]

The rule proposal provided for a sixty-day public comment period. The GRC received four public comments in response to its proposal, three of which opposed N.J.A.C. 5:105-1.6(a)(1). LFTG's counsel submitted a comment "in [their] personal capacity" and objected to the provision as "contrary to the First Amendment right to access records of judicial and administrative proceedings, as well as the underlying purposes of OPRA to promote a transparent government." They also stated complaints and submissions related to one's

request for government records in the Superior Court are "immediately visible . . . for anyone to see" and "[t]he public is thereafter able to monitor the case through the e-Courts docket as it progresses and view the agency's response, the requestor's reply, submissions by third parties, and decisions and orders by the court." They argued "[t]here is no reason that a GRC proceeding should be any different" and allowing GRC submissions to be public enables "members of the public and reporters to track and understand GRC proceedings better."

Other commentors opposed the new regulation on similar bases, asserting that by deeming denial-of-access complaint submissions to the GRC are not government records under OPRA, the regulation undermines an "important public interest in knowing what arguments public agencies are making, in gaining access to source documents, and in seeing communications between GRC staff and parties" and that without knowing "where cases are resolved, settled, or withdrawn," the records of that information "could be sealed forever" from public access. Moreover, commentors asserted that immediate access to the submissions made in a denial-of-access process provides "invaluable guidance on how to navigate the complaint process itself" and, if denial-of-access submissions are restricted from public access, "the GRC is denying the public the ability to discern for themselves the errors in

11

their requests" which may "create an ambiguity that leads to more denial[-]of[-]access complaint submissions and hinders the public's right of access to government records."

On November 7, 2022, the GRC published for final adoption the new regulation set forth at N.J.A.C. 5:105-1.6 and included a summary of public comments and agency responses. See 54 N.J.R. 2081(a) (Nov. 7, 2022). In response to the comments made regarding N.J.A.C. 5:105-1.6(a)(1), the GRC stated "the proposed [regulation] does not bar access to complaint filings in perpetuity; requestors would be able to seek access to them pursuant to OPRA, following resolution of the complaint, including those 'resolved, settled, or withdrawn'" and clarified "no complaint file maintained by the GRC will be permanently excluded from public access." Ibid. The GRC claimed the regulation would allow complaints "to be adjudicated to finality free from outside and unsolicited influence." Ibid. It also noted the "exemption" would "better serve[] complainants by eliminating their exposure to unsolicited party involvement during an adjudication, especially where the complaints address complainants' sensitive personal matters." Ibid. The GRC stated the exemption would "ensure[] a smoother and more effective adjudication process

A-0963-22

beneficial to the parties . . . but especially to the complainant." <u>Ibid.</u> The GRC adopted N.J.A.C. 5:105-1.6 without making any changes.[3]

LFTG later filed this appeal challenging the validity of N.J.A.C. 5:105-1.6(a)(1).

### III.

LFTG contends N.J.A.C. 5:105-1.6(a)(1) is invalid because it is arbitrary, capricious, and unreasonable, and does not serve the public interest. LFTG argues the regulation "significantly undermines the public's interest" by "keeping the public from monitoring how the GRC adjudicates complaints" and "keeping the public from seeing how their own public officials are being accused of violating OPRA and how those public officials respond to denial[-]of[-]access complaints." LFTG further contends that complaints and submissions filed in Superior Court challenging a public agency's denial of access to government records under OPRA are subject to public access, and it is therefore irrational for the GRC to exempt from public access the submissions in a proceeding before it that involve challenges to a public agency's denial of access to government records under OPRA.

The GRC claims the regulation comports with OPRA because it only temporarily shields from public access the submissions made in a denial-of-

---

[3] N.J.A.C. 5:105-1.6(a)(2) and (3) are not challenged on appeal.

access proceeding. Moreover, the GRC claims the regulation serves the public's interest because it insulates the proceedings in a denial-of-access adjudication from unsolicited outside influence and reduces the exposure of complainants' sensitive personal information that may be implicated by their access requests and complaints.

Agency regulations are presumed "'valid and reasonable,' unless and until 'the party challenging a regulation . . . prov[es] that the agency's action was "arbitrary, capricious or unreasonable."'" S.L.W. v N.J. Div. of Pensions & Benefits, 238 N.J. 385, 394 (2019) (quoting N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 548 (2012)); see also In re Adoption of N.J.A.C. 17:1-6.4, 17:1-7.5 & 17:1-7.10, 454 N.J. Super. 386, 395 (App. Div. 2018). In determining whether a challenge to a regulation has met that burden, a court must evaluate:

> (1) whether the agency's action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.
>
> [S.L.W., 238 N.J. at 394 (quoting Schundler, 211 N.J. at 548) (internal quotation marks omitted).]

14

In our consideration of the GRC's adoption of N.J.A.C. 5:105-1.6(a)(1), we must "'look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives.'" Ibid. (quoting Schundler, 211 N.J. at 548).

Under our limited scope of review, we must recognize that "administrative rulemaking does not require findings of fact to justify the regulations and facts sufficient to justify regulations are presumed." In re Adoption of Unif. Hous., 390 N.J. Super. 89, 103-04 (App. Div. 2007) (citations omitted). Factual findings by an agency may rest on the agency's expertise without supporting evidence, "'especially'" where the findings are "'of a judgmental or predictive nature.'" Id. at 101 (quoting In re Regulation of Operator Serv. Providers, 343 N.J. Super. 282, 332 (App. Div. 2001)). Thus, an administrative regulation must be rationally related to the public interest underlying the enabling statute. See, e.g., Bally Mfg. Corp. v. N.J. Casino Control Comm'n., 85 N.J. 325, 335 (1981). As our Supreme Court has explained, "[t]he test is essentially one of rational basis. 'Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances.'" Worthington v. Fauver, 88 N.J. 183, 204 (1982) (quoting Bayshore Sewerage Co. v. Dep't of Env't Prot., 122 N.J. Super. 184, 199 (Ch. Div. 1973)); see also

15

Bergen Pines Hosp. v. Dep't of Hum. Servs., 96 N.J. 456, 477 (1984) (explaining an agency's regulation is arbitrary and capricious where it is found "unreasonable or irrational").

A regulation is rationally related to the public's interest if it is "'within the fair contemplation of the delegation of the enabling statute.'" In re Adoption of N.J.A.C. 17:1-6.4, 17:1-7.5 & 17:1-7.10, 454 N.J. Super. at 395 (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561-62 (1978)). Accordingly, "the application of 'substantial deference' afforded to regulations is only available if they are 'consistent with the governing statutes' terms and objectives.'" Ibid. (quoting In re Adoption of Amends. to N.J.A.C. 6:28-2.10, 3.6 & 4.3, 305 N.J. Super. 389, 401 (App. Div. 1997)). Stated differently, "'a regulation can only be set aside if it is proved to be arbitrary or capricious, plainly transgresses the statute it purports to effectuate, or alters the terms of the statute and frustrates the policy embodied in it.'" In re Agric., Aquacultural, and Horticultural Water Usage Certification Rules, 410 N.J. Super. 209, 223 (App. Div. 2009) (quoting In re Adopted Amends. to N.J.A.C. 7:7A-2.4, 365 N.J. Super. 255, 265 (App. Div. 2003)).

To determine if the regulation is consistent with the governing statute, we must "determine the intent of the Legislature," Med. Soc'y of N.J. v. N.J. Dep't of L. & Pub. Safety, 120 N.J. 18, 26 (1990), by first looking at the

16                                                                          A-0963-22

statutory language, <u>DiProspero v. Penn</u>, 183 N.J. 477, 492 (2005). This analysis may necessarily include consideration of "enabling legislation . . . to ascertain if there is in fact sufficient underlying authority [for the regulation]." <u>In re Adoption of N.J.A.C. 17:1-6.4, 17:1-7.5 & 17:1-7.10</u>, 454 N.J. Super. at 396 (quoting <u>In re N.J.A.C. 7:1B-1.1</u>, 431 N.J. Super. 100, 119 (App. Div. 2013)) (internal quotation marks omitted). We also "'may look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives.'" <u>Ibid.</u> (quoting <u>Long</u>, 75 N.J. at 562).

We therefore "defer to the interpretation of legislation by the administrative agency to whom its enforcement is entrusted, but only if that interpretation 'is not plainly unreasonable.'" <u>Ibid.</u> (quoting <u>Merin v. Maglaki</u>, 126 N.J. 430, 436-37 (1992)). Put differently, we "defer to [an administrative agency's] choice so long as the selection is responsive to the purpose and function of the agency." <u>Emmer v. Merin</u>, 233 N.J. Super. 568, 581 (App. Div. 1989) (quoting <u>Texter v. Hum. Servs. Dep't</u>, 88 N.J. 376, 385-86 (1982)); <u>see also</u> <u>In re Twp. of Warren</u>, 132 N.J. 1, 26 (1993) ("Courts . . . act only in those rare circumstances when it is clear that the agency action is inconsistent with the legislative mandate." (quoting <u>Williams v. Dep't of Hum. Servs.</u>, 116 N.J. 102, 108 (1989))).

Measured against these principles, we have no hesitancy in declaring N.J.A.C. 5:105-1.6(a)(1) invalid.  As we have noted, and for the reasons we explain, the regulation violates OPRA's plainly stated requirements, finds no basis in OPRA, and is inconsistent with the well-established legislative mandate that the citizens of this state are entitled to prompt and full public access to government records under OPRA.

OPRA protects the public interest in transparency in the operations of public agencies by requiring "the prompt disclosure of government records." Mason, 196 N.J. at 65.  Indeed, we have explained that "OPRA's paramount principle [is] 'ready access to government records.'"  Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 160 (App. Div. 2011) (quoting Burnett v. Cnty. of Bergen, 198 N.J. 408, 421 (2009)).  And "OPRA's framework calls for quick action" by mandating that "[g]overnment bodies . . . respond promptly to requests for records:  immediately in the case of budgets, bills, vouchers, contracts, and public employee salary information, N.J.S.A. 47:1A-5(e); and 'as soon as possible, but not later than seven business days' for other government records, N.J.S.A. 47:1A-5(i)."  Mason, 196 N.J. at 69.

The GRC argues N.J.A.C. 5:105-1.6(a)(1) "is not inconsistent with OPRA, nor does it violate an express or implied policy of the Legislature."

18

We disagree. N.J.S.A. 47:1A-5(i)(1) imposes a plainly stated seven-business-day deadline for a custodian of a government record to provide access to government records requested under OPRA and allows for the setting of a "shorter time . . . by statute, regulation, or executive order." The statute, however, makes no provision for, and does not otherwise allow, the provision of government records beyond the statutory seven-day deadline under the circumstances extant here.[4] To the contrary, the statute provides that a failure to provide a government record within the stated time limitation constitutes a "denial" of a request for a government record under OPRA. N.J.S.A. 47:1A-5(i)(1).

The challenged regulation, N.J.A.C. 5:105-1.6(a)(1), does not permanently bar access to the submissions made as part of the GRC's adjudication of a denial-of-access complaint. In fact, the GRC justifies its enactment of N.J.A.C. 5:105-1.6(a)(1) in part because it merely delays the GRC's production of the submissions—which the GRC otherwise recognizes constitute government records subject to disclosure under OPRA—until the adjudication or disposition of a denial-of-access complaint is completed.

---

[4] N.J.S.A. 47:1A-5(i)(2) provides that the seven-day deadline for the provision of a response to a government records request under N.J.S.A. 47:1A-5(i)(1) does not apply during a "period declared . . . as a state of emergency, public health emergency, or state of local disaster emergency." The GRC does not argue such circumstances support its adoption of N.J.A.C. 5:105-1.6(a)(1).

A-0963-22

The GRC ignores that the singular effect of the regulation is to delay the GRC's delivery of government records in response to a citizen's request beyond the statutorily mandated seven-day period prescribed by N.J.S.A. 47:1A-5(i)(1). When properly considered in that context, the regulation bypasses OPRA's mandatory temporal requirements under the guise of a unilateral declaration that government records—the denial-of-access complaint submissions—are not government records until the GRC says so. The regulation permits the GRC to delay supplying its own government records under OPRA during whatever indefinite period it takes to do its job by finally adjudicating, or otherwise obtaining the settlement or dismissal of, a denial-of-access complaint.[5]

---

[5] Based on the GRC's history, the practical effect of the regulation is anathema to one of OPRA's paramount purposes: the timely provision of government records requested by citizens. See Mason, 196 N.J. at 69; Newark Morning Ledger Co., 423 N.J. Super. at 160. A July 26, 2022 report from the New Jersey Office of the State Comptroller observed that the "GRC has not processed complaints alleging an improper denial of access to" government "records in a timely manner and has accordingly failed to consistently accomplish one of" OPRA's "most important goals"—"receiv[ing], hear[ing], review[ing], and adjudicat[ing] disputes over access to public records 'as expeditiously as possible.'" See Off. of the State Comptroller, OSC Review: Has the Government Record Council Decided Public Records Complaints as Expeditiously as Possible? 1 (July 26, 2022), https://www.nj.gov/comptroller/news/docs/grc_final_report.pdf.

The Office of the State Comptroller also reported that "[f]or fiscal year 2012 through 2020, the average complaint took [the] GRC twenty-one months to

The regulation therefore directly contravenes N.J.S.A. 47:1A-5(i)(1)'s express requirement that government records be provided within the time deadline determined and enacted by the Legislature and is otherwise inconsistent with OPRA's paramount principle of providing citizens with prompt and ready access to government records. Mason, 196 N.J. at 65. Through its adoption of the regulation, the GRC has provided for itself an extension of the time within which it may respond to each and every request for government records—the submissions—beyond the deadline for the provision of such government records established by the Legislature and embodied in N.J.S.A. 47:1A-5(i)(1)'s plain and unequivocal terms.

"When a statute is 'silent or ambiguous' about an issue, we may not replace an agency's 'permissible interpretation of that statute with our own view,'" In re N.J.A.C. 17:2-6.5, 468 N.J. Super. 229, 233 (App. Div. 2021) (quoting Kasper v. Bd. of Trs. of the Tchrs.' Pension & Annuity Fund, 164 N.J. 564, 581 (2000)), but that is not what has happened here. N.J.S.A. 47:1A-

process from receipt to adjudication," and the "GRC regularly maintains a backlog of 300 to 500 open complaints." Ibid. It further explained that from 2017 to 2021, the "GRC took two to three times longer than the courts to close OPRA complaints" and observed the GRC's "failure to expeditiously adjudicate these disputes hinders the public's access to government records." Ibid. Thus, if past is prologue, the regulation's bar to the disclosure of the submissions in a denial-of-access case would permit the GRC to flout in an extraordinary manner the statutory seven-day deadline for the provision of government records in response to an OPRA request. N.J.S.A. 47:1A-5(i)(1).

5(i)(1) unambiguously requires that a public agency provide government records within seven business days of its receipt of a request, and where a statute is "'clear and unambiguous, a regulation cannot amend, alter, enlarge, or limit the terms of the legislative enactment.'" In re N.J.A.C. 12:17-9.6, 395 N.J. Super. 394, 406 (App. Div. 2007) (quoting N.J. Chamber of Com. v. N.J. Election L. Enforcement Comm'n, 82 N.J. 57, 82 (1980)). Where, as here, a regulation "is inconsistent with the legislative mandate," id. at 407, "flout[s] the statutory language and undermine[s] the intent of the Legislature," ibid. (quoting In re Adoption of N.J.A.C. 7:2B, 128 N.J. 442, 450 (1992)), or "'violate[s] the enabling act's express or implied legislative policies,'" In re N.J.A.C. 17:2-6.5, 468 N.J. Super. at 234 (quoting Williams, 116 N.J. at 108), we must invalidate and set it aside. For that reason alone, we invalidate N.J.A.C. 5:105-1.6(a)(1). See In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 489 (2004) ("[I]f the regulation is plainly at odds with the statute, [the court will] set it aside.").

There are, however, separate but equally dispositive reasons requiring the invalidation of the regulation. The Legislature defined both government records that must be provided pursuant to OPRA and records that are not subject to disclosure under OPRA because they are deemed by the Legislature to be "confidential." See N.J.S.A. 47:1A-1.1 (defining government records

22                                                                    A-0963-22

and listing records that are confidential). Here, the GRC recognizes that submissions made during a denial-of-access proceeding fall within the Legislature's definition of government records as set forth in OPRA. See ibid. It argues, however, that the regulation properly declares the submissions are not government records under OPRA because they are "confidential."

The GRC's argument fails to consider that the Legislature has expressly defined those government records that are not subject to OPRA's disclosure requirements because the Legislature has deemed them to be confidential, see N.J.S.A. 47:1A-1.1, and the submissions to the GRC during a denial-of-access proceeding are not among them. Indeed, the GRC does not argue that the submissions during a denial-of-access proceeding fall within any of the thirty categories of government records the Legislature has defined as confidential in N.J.S.A. 47:1A-1.1, and the GRC ignores that those thirty categories of government records do not include submissions to the GRC during a denial-of-access proceeding.

Where, as here, the Legislature provided in N.J.S.A. 47:1A-1.1 a detailed list of government records it deemed confidential such that those records are excluded from the government records that must be provided under OPRA, it may be concluded the Legislature—by omission—intended to exclude all other records from those records it expressly designated as

23

confidential in the statute. See <u>L.C. v. Bd. of Rev., Dep't of Lab.</u>, 439 N.J. Super. 581, 599 (App. Div. 2015) ("[G]enerally, 'when the Legislature creates an exhaustive list, it is assumed to intend to exclude what is not enumerated unless it indicates by its language that the list or section is not meant to be exhaustive or exclusive.'" (quoting <u>Borough of E. Rutherford v. E. Rutherford PBA Loc. 275</u>, 213 N.J. 190, 215 (2013))). Thus, in our view, by failing to include submissions made during a GRC denial-of-access proceeding among those deemed confidential and not subject to disclosure under OPRA, the Legislature made clear such submissions are not confidential and therefore constitute government records subject to disclosure in accordance with OPRA's requirements. See <u>ibid.</u>

Moreover, in enacting the list of government records deemed confidential and not subject to disclosure under OPRA, the Legislature was fully aware there would be denial-of-access proceedings before the GRC during which submissions to the GRC would be made. That is because OPRA itself otherwise provides for the adjudication of denial-of-access complaints by the GRC. N.J.S.A. 47:1A-6. Yet, the Legislature did not include the submissions made to the GRC during the adjudication of such complaints among those government records it defined as confidential in N.J.S.A. 47:1A-1.1. By failing to do so while expressly defining thirty other categories of

government records as confidential, the Legislature made clear its decision that submissions to the GRC during a denial-of-access proceeding do not constitute confidential records that are exempt from disclosure under OPRA.

N.J.A.C. 5:105-1.6(a)(1) therefore represents an attempt to redefine and supplement what constitutes a confidential government record under N.J.S.A. 47:1A-1.1 in a manner wholly inconsistent with the Legislature's plainly stated determination of the government records that qualify as such. See generally L.C., 439 N.J. Super. at 599. We find no statutory authority permitting the GRC to do so, and the GRC points to none.[6] Because the effect of N.J.A.C. 5:105-1.6(a)(1) is to "amend, alter, [and] enlarge . . . the terms of" N.J.S.A. 47:1A-1.1, and the regulation otherwise "flout[s] the statutory language" by ignoring the definitions of confidential records in N.J.S.A. 47:1A-1.1, the GRC exceeded its authority in adopting the regulation and, for that reason, the

---

[6] We recognize that N.J.S.A. 47:1A-1 provides in part that "all government records shall be public to access unless exempt from such access by" OPRA and any "regulation[s] promulgated under the authority of any statute or Executive Order of the Governor," but, the GRC does not cite to any statute or Executive Order authorizing it to exempt from public access the submissions made during a denial-of-access proceeding, we have found none, and, as we have explained, N.J.A.C. 5:105-1.6(a)(1) is inconsistent with OPRA's plain terms. We also note that the GRC does not claim the regulation embodies any "grant of confidentiality" established prior to the enactment of OPRA that was "established or recognized by the constitution of this State, statute, court rule or judicial case law, which privilege or grant of confidentiality may duly be claimed to restrict public access to a public record or government record." N.J.S.A. 47:1A-9.

regulation is invalid. In re N.J.A.C. 12:17-9.6, 395 N.J. Super. at 406; see also N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 385-86 (2008) (explaining "an agency 'may not under the guise of interpretation . . . give the statute any greater effect than its language allows'" (quoting Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528 (1964))).

Although N.J.A.C. 5:105-1.6(a)(1) is invalid for the reasons we have explained—it directly contradicts OPRA's plain requirements—for purpose of completeness, we also find the regulation is invalid because it is inconsistent with OPRA's terms and objectives, In re Adoption of N.J.A.C. 17:1-6.4, 17:1-7.5 & 17:1-7.10, 454 N.J. Super. at 395, frustrates and fails to comport with the policies OPRA embodies, McGee v. Twp. of E. Amwell, 416 N.J. Super. 602, 612 (App. Div. 2010); In re Agric., Aquacultural, and Horticultural Water Usage Certification Rules, 410 N.J. Super. at 223, and is arbitrary and capricious, Bergen Pines Hosp., 96 N.J. at 477.

The GRC argues the regulation is supported by a need to "allow complaints to be adjudicated to finality free from outside and unsolicited influence" and "eliminate [complainants'] exposure to unsolicited party involvement during an adjudication." The GRC further claims the regulation "will reduce exposure of 'complainants' sensitive personal matters' that may be implicated in their request or complaint." The GRC contends those protections

26

will result in "a smoother and more effective adjudication process beneficial to the parties engaged therein, but especially to the complainant." Thus, the GRC claims the regulation is necessary "for the protection of the public interest" and is therefore supported under N.J.S.A. 47:1A-1.

We reject the GRC's arguments because the regulation's broad declaration that any and all submissions made during a denial-of-access proceeding do not constitute government records until the proceeding is concluded is, on its face, inconsistent with the plainly stated legislative policy that "all government records shall be subject to public access unless exempt" under OPRA. N.J.S.A. 47:1A-1 (emphasis added). And, again, the GRC fails to point to an OPRA provision exempting the submissions from disclosure or authorizing a regulation establishing such an exemption. Further, as we have discussed, the regulation is inconsistent with, and violative of, certain OPRA provisions. The regulation therefore is inconsistent with OPRA's plainly stated legislative policies and invalid as a result. In re Adoption of N.J.A.C. 17:1-6.4, 17:1-7.5 & 17:1-7.10, 454 N.J. Super. at 395.

The regulation imposes a broad and general prohibition against the disclosure of what the GRC recognizes are government records under OPRA based on a purported need to protect complainants from outside and undue influence and exposure of sensitive personal information. The regulation is

arbitrary and capricious because it is wholly unnecessary to achieve that result; OPRA and the GRC's regulations otherwise provide standards for protecting the disclosure of information pertaining to a complainant.

OPRA provides that a "public agency has a responsibility and an obligation to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1. However, we have held that "a citizen submitting an OPRA request ordinarily would not have a reasonable expectation that the request will not be disclosed to others." Scheeler v. Off. of the Governor, 448 N.J. Super. 333, 348 (App. Div. 2017). We discern no basis to conclude that a citizen would have any greater reasonable expectation of privacy during the GRC's adjudication of a complaint challenging a denial of access to the government records he or she had requested.

The GRC does not cite to any legal authority establishing that citizens filing a denial-of-access complaint with the GRC have a reasonable expectation of privacy in the submissions made during the adjudicatory proceeding such that there are grounds to conclude the regulation's broad prohibition against disclosure of submissions to the GRC is required to protect any purported reasonable expectation of privacy. A decision to withhold

government records based on a citizen's reasonable expectation of privacy requires "a balancing test that weighs both the public's strong interest in disclosure with the need to safeguard from public access personal information that would violate a reasonable expectation of privacy." Burnett, 198 N.J. at 427. That weighing process necessarily requires public access here because the record is devoid of any evidence a citizen filing a denial-of-access complaint has a reasonable expectation of privacy in all the submissions made to the GRC such that those expectations outweigh the public's right of access to the submissions that the GRC recognizes constitute government records under OPRA. See, e.g., Scheeler, 448 N.J. Super. at 349 (explaining "there is no justification for denying the public access to all third-party OPRA requests merely because of the possibility that a requestor might have an interest in preserving the confidentiality of a particular request").

We also reject any notion that a citizen filing a denial-of-access complaint may have a reasonable expectation of privacy in the submissions made to the GRC. Under the GRC's regulations, all submissions must be in writing, see N.J.A.C. 5:105-2.3(b), and must be served on all other parties to the proceeding, see N.J.A.C. 5:105-2.3(g) to (h), including the public agency that denied the OPRA request and any intervenors. Therefore, a citizen filing a denial-of-access complaint knows that the submissions before the GRC will

be distributed to the parties and intervenors in the proceeding who, as acknowledged by the GRC, may distribute the submissions to others in accordance with OPRA, the common-law right of access applicable to public agencies, and as they otherwise deem appropriate. Given those circumstances, we discern no basis to conclude requestors have a reasonable expectation of privacy that outweighs the presumption government records shall be produced in accordance with OPRA such that N.J.A.C. 5:105-1.6(a)(1) is consistent with the legislative policies underlying OPRA.

OPRA otherwise provides individual citizens with protections against the disclosure of private information for which a reasonable expectation of privacy may be properly weighed against a right of access under OPRA. For example, OPRA describes government records that are deemed confidential and not subject to public access, N.J.S.A. 47:1A-1.1, and prohibits disclosure of records concerning biotechnology trade secrets, N.J.S.A. 47:1A-1.2, personal information concerning a victim of a crime, N.J.S.A. 47:1A-2.2, records concerning "investigation[s] in progress by any public agency," and certain personnel and pension records in the possession of a public agency, N.J.S.A. 47:1A-10. OPRA also requires the redaction of certain personal identifying information from government records, N.J.S.A. 47:1A-5(a), including handgun and firearms purchaser identification cards, N.J.S.A.

47:1A-1.3. And, "[t]he GRC has authority to review requested documents in camera in order to determine whether they were properly withheld" by a public agency. McGee, 416 N.J. Super. at 613 (citing N.J.S.A. 47:1A-7(f)).

Other existing GRC regulations further protect citizens filing denial-of-access complaints from any undue or outside influence by permitting a complainant to remain anonymous throughout the adjudicatory process based on the presentation of evidence satisfying one of four criteria. See N.J.A.C. 5:105-2.3(j) and (k).[7] To qualify to proceed anonymously, a requestor must establish by clear and convincing evidence that compelling circumstances exist such that:

> (1) There is a genuine risk of physical harm;
> (2) The complaint will entail revelation of highly personal and private information;
> (3) The very relief sought would be defeated by revealing the complainant's identity; or
> (4) Other substantial reasons why identification of the party would be improper.
>
> [N.J.A.C. 5:105-2.3(j).]

In its adoption of N.J.A.C. 5:105-2.3(j), the GRC explained that it did so to confirm that "anonymous complaints are allowed" and to "adopt[] a good cause standard . . . for requestors wishing to proceed anonymously." 54 N.J.R. 2081(a) (Nov. 7, 2022). Incongruously, however, the GRC also adopted

---

[7] LFTG does not challenge the validity of N.J.A.C. 5:105-2.3(j) or (k).

A-0963-22

N.J.A.C. 5:105-1.6(a)(1), which in effect renders every requestor anonymous during the pendency of a denial-of-access proceeding—without any requisite showing of good cause or satisfaction of the criteria—by making the denial-of-access complaint and all other submissions in the proceeding unavailable as government records until the adjudication is complete. Under N.J.A.C. 5:105-1.6(a), a requestor filing a denial-of-access complaint remains anonymous—at least until the case ends—because the complaint and all other submissions made in the proceeding are not subject to public disclosure until the adjudication is concluded.[8]

N.J.A.C. 5:105-1.6(a)(1) also runs afoul of the rights of any putative person or entity that might seek to intervene in a denial-of-access proceeding as expressly permitted under N.J.A.C. 5:105-2.2(b)(1). Because N.J.A.C. 5:105-1.6(a)(1) drapes all pending denial-of-access cases in a cloak of secrecy until final disposition, a putative intervenor has no means to learn about

---

[8] In finding N.J.A.C. 5:105-1.6(a)(1) invalid, we do not hold that submissions made during a denial-of-access proceeding are subject to public access under OPRA if they are otherwise exempt from disclosure under OPRA or the GRC's other regulations. We find invalid only the GRC's broad declaration—embodied in N.J.A.C. 5:105-1.6(a)(1)—that all submissions are not government records during the pendency of a denial-of-access proceeding. The GRC may otherwise withhold from public access under OPRA submissions made during a denial-of-access proceeding that are exempt from public access under OPRA or the GRC's other regulations that are not the subject of the challenge here.

pending GRC cases through an examination of denial-of-access complaints and other submissions presented to the GRC. Without access to the denial-of-access submissions based on N.J.A.C. 5:105-1.6(a)(1)'s declaration they are not government records, eligible intervenors are deprived of the knowledge of pending cases in which they are entitled to intervene until it is too late—when the case is fully adjudicated or otherwise concludes.

The regulation is also inconsistent with OPRA because, as acknowledged by the GRC, the submissions may be properly obtained under OPRA from the public agency involved in the denial-of-access complaint. As we have noted, all submissions made by the parties and any intervenors in a denial-of-access proceeding must be served on all the parties, one of which will always be the public agency that denied the request for its government records in the first instance.

There is nothing in OPRA or the GRC's regulations that bars another public agency that serves or is served with submissions to the GRC in a denial-of-access proceeding from providing the submissions in response to an OPRA request served upon it. And, more importantly, the public agency is required under OPRA to provide the submissions as government records in response to a citizen's request because the GRC's adoption of N.J.A.C. 5:105-1.6(a)(1)

only putatively exempts the submissions from the definition of government records when they are in the GRC's hands.

Thus, N.J.A.C. 5:105-1.6(a)(1) does not provide a requestor with protection from undue or unsolicited influence during the pendency of a denial-of-access complaint before the GRC because the submissions, by the GRC's own admission, may be obtained under OPRA directly from the public agency that is a party to the proceeding. Viewed as such, the regulation incongruously declares the submissions in a denial-of-access case are not government records under OPRA in the GRC's possession but simultaneously are government records in the hands of the public agency that is a party to the proceeding before the GRC.

We find no support in the law or logic for such a result and conclude the regulation is manifestly inconsistent with the legislative policies—full and prompt disclosure of government records—underlying OPRA. The regulation does nothing more than hide from public view the performance of the GRC's essential function of adjudicating denial-of-access complaints, rendering it impossible for the citizens of New Jersey to determine until cases are concluded what complaints have been filed and by whom, what public agencies have denied OPRA requests, the bases for the requests and the denials, and whether the GRC and the public agencies that have denied OPRA

34

requests are properly doing their jobs.  See Burnett, 198 N.J. at 414 ("[G]overnment works best when its activities are well-known to the public it serves.").

We are unpersuaded by the GRC's argument that N.J.A.C. 5:105-1.6(a)(1) is valid because other agencies have adopted regulations exempting records from disclosure under OPRA during indeterminate periods.  See, e.g., N.J.A.C. 19:33-2.2(a)(11), (12) (New Jersey Schools Development Authority keeps bid submissions and evaluative documents associated with procurement confidential prior to a "Notice of Award for such procurement" and property acquisition documents confidential until title has been closed); N.J.A.C. 4A:1-2.2(c) (appeal records from the Civil Service Commission and Division of Equal Employment Opportunity are not subject to public access); N.J.A.C. 3:3-2.1(a)(3) (New Jersey Department of Banking and Insurance's complaint files are confidential).  The argument is founded on the premise that N.J.A.C. 5:105-1.6(a)(1) should be deemed valid because those regulations similarly impose only temporary restrictions on the disclosure of government records.

Our determination N.J.A.C. 5:105-1.6(a)(1) is invalid, however, is not founded exclusively on the temporary and undetermined length of the GRC's exclusion of the submissions from the definition of government records under OPRA.  Instead, as we have explained, the regulation is otherwise inconsistent

with OPRA's express terms and violates the legislative policies underlying the statute. The GRC makes no showing the regulations on which it relies suffer from similarly fatal infirmities.

Moreover, unlike N.J.A.C. 5:105-1.6(a)(1), the regulations cited by the GRC, which protect from disclosure under OPRA bidding and related deliberative or property acquisition records, N.J.A.C. 19:33-2.2(a)(11), (12), personnel related records, N.J.A.C. 4A:1-2.2(c), and investigative and financial records, N.J.A.C. 3:3-2.1(a)(3), appear supported by provisions in OPRA. See, e.g., N.J.S.A. 47:1A-1.1 (defining as confidential under OPRA "proprietary . . . financial information" and "information which, if disclosed, would give an advantage to competitors or bidders"); N.J.S.A. 47:1A-3 (defining as confidential under OPRA government records "pertain[ing] to an investigation in progress by any public agency"); N.J.S.A. 47:1A-10 (excluding from government records under OPRA "the personnel . . . records of any individual in the possession of a public agency"). The GRC does not point to any such authority in OPRA supporting N.J.A.C. 5:105-1.6(a)(1).[9]

For those reasons, we declare N.J.A.C. 5:105-1.6(a)(1) invalid.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] We do not offer any opinion on the validity of the regulations cited by the GRC. They are not before us.

A-0963-22